644 F.2d 132
 UNITED STATES of America
v.
Albert DeFALCO, Ronald Blackwell, Leonardo Leonard Arcieri,
Ronald Chicarella, Carlos Varas, Patrice Patricio
Bergoeing, Albert DeFalco, Appellant,
No. 78-2126.
UNITED STATES of America
v.
Albert DeFALCO, Ronald Blackwell, Leonard Arcieri, Ronald
Chicarella, Carlos Varas, Patrice Patricio
Bergoeing, Albert DeFalco, Appellant, No. 78-2209.
 Nos. 78-2126, 78-2209.
 United States Court of Appeals,
Third Circuit.
 Argued June 6, 1979.
Reargued Nov. 8, 1979.
Decided Dec. 28, 1979.
As Amended Jan. 8, 1980.
 
 Fredric J. Gross (argued), Haddonfield, N. J., for appellant; Joanne Ventura, Collingswood, N. J., on the brief.
 Robert J. Del Tufo, U. S. Atty., Newark, N. J., for appellee; Maryanne T. Desmond (argued), Chief, Appeals Division, Asst. U. S. Atty., Newark, N. J., on the brief.
 Argued June 6, 1979.
 Before ALDISERT, GIBBONS and VAN DUSEN, Circuit Judges.
 Reargued Nov. 8, 1979.
 Before SEITZ, Chief Judge, ALDISERT, ADAMS, GIBBONS, ROSENN, HUNTER, WEIS, GARTH, HIGGINBOTHAM and SLOVITER, Circuit Judges.
 
 OPINION ANNOUNCING THE JUDGMENT OF THE COURT
 
 1
 ALDISERT, Circuit Judge, with whom GIBBONS, JAMES HUNTER, III, WEIS and A. LEON HIGGINBOTHAM, Jr., Circuit Judges, join.
 
 
 2
 In Moore v. United States, 432 F.2d 730, 736 (3d Cir. 1970), we determined that the standard of competence mandated by the sixth amendment for counsel in criminal cases was "the exercise of the customary skill and knowledge which normally prevails at the time and place." In this appeal from an order of the district court denying relief requested under 28 U.S.C. § 2255 without an evidentiary hearing, the major question presented is whether that standard can be properly vindicated when counsel, while representing appellant on a direct criminal appeal, was himself under indictment and had entered into a plea bargain, during the pendency of the appeal, in the same federal district court from which the appeal was taken. We hold that it cannot.
 
 
 3
 Appellant Albert DeFalco had been convicted in the United States District Court of New Jersey of conspiracy under 18 U.S.C. § 371 and of three counts of falsely impersonating a federal official under 18 U.S.C. § 912. The charges alleged that DeFalco had illegally represented himself to be a spokesman for Congressman Henry Helstoski. He was sentenced on December 8, 1975 by Judge Frederick B. Lacey and thereafter filed a notice of appeal to this court at No. 76-1028. Subsequently, on January 8, 1976, he retained Vincent L. Verdiramo, Jr., to represent his appeal. Briefs were filed and the matter was listed for disposition without oral argument on October 6, 1976. The judgment of conviction was affirmed on October 8, 1976. United States v. DeFalco, 546 F.2d 419 (3d Cir. 1976), cert. denied, 430 U.S. 965, 97 S.Ct. 1644, 52 L.Ed.2d 356 (1977).
 
 
 4
 At the time appellant retained Mr. Verdiramo, the attorney had already been indicted three times by a grand jury of the United States District Court of New Jersey.[1] After filing appellant's brief, Mr. Verdiramo was indicted at No. 76-201-4 on June 2, 1976. One of the other defendants charged in this indictment was Congressman Helstoski.
 
 
 5
 Verdiramo entered a plea of not guilty before Judge Lacey at indictment No. 74-313 on August 23, 1974. His motion for assignment of a judge from outside New Jersey was filed on September 13, 1974, and was denied by Judge Lacey on October 29, 1974. He requested from Judge Lacey a bill of particulars and was granted some relief. Judge Lacey denied Verdiramo's reasserted motions for discovery and for a judge from another district on November 19, 1974, and released certain property from Verdiramo's recogizance bond on January 30, 1974. The case was transferred to Judge H. Curtis Meanor on April 21, 1975. Following his indictment at No. 76-201-4, on June 2, 1976, Verdiramo again filed a motion to recuse the trial court; on September 8, 1976, this case was also transferred to Judge Meanor by order of Chief Judge George H. Barlow.
 
 
 6
 Before DeFalco's appeal was decided by this court, Mr. Verdiramo consummated a plea bargain with the United States Attorney for the District of New Jersey and on September 28, 1976, his guilty plea at No. 76-201-4 was entered before Judge Meanor. The reception of Verdiramo's guilty plea was interrupted in order to advise Judge Lacey of the assignment of Verdiramo's case to another judge. Judge Lacey appeared at the Verdiramo plea reception and gave his consent to the transfer of the Verdiramo case to another judge after being advised of the specifics of the Verdiramo plea bargain.[2]
 
 
 7
 During the Rule 11 inquiry, the sentencing judge informed Verdiramo that if the plea were accepted
 
 
 8
 it will be my duty . . . to suspend you immediately from the further practice of law before this court . . . . (T)his plea places you in jeopardy of disbarment both from this Court and before the New Jersey courts, and perhaps before any other court to which you are admitted to practice.
 
 
 9
 Appendix at 163-64. On the same date, September 28, 1976, Judge Meanor entered an order suspending Verdiramo "from further practice of law in the United States District Court for the District of New Jersey." (Docket entry October 4, 1976, Indictment No. 76-201-4). Thus, while DeFalco's appeal was still pending in this court, eight days before the scheduled date of disposition of his appeal, his attorney had entered into a plea bargain, had pleaded guilty, and had been suspended from practicing law in the United States District Court at the District of New Jersey.
 
 
 10
 In an affidavit filed in this court at No. 76-1028, Mr. DeFalco stated:
 
 
 11
 1. I am the appellant in the instant matter. On the 8th day of December 1975, I was convicted in the United States District Court for the District of New Jersey, of a violation of law and received a sentence of six years.
 
 
 12
 2. Thereafter, and on the 8th day of January 1976, I retained VINCENT L. VERDIRAMO, ESQ., a member of the bar of the State of New Jersey, to represent me in the appeal to this Court. At no time during any of the ensuing months was I aware of the fact that Mr. Verdiramo had committed any actions which would disqualify him from the practice of law, or in representing me in connection with this appeal.
 
 
 13
 3. In fact, prior thereto, and subsequent thereto, Mr. Verdiramo had committed actions and participated in actions which resulted in his indictment by a Federal grand jury. Although I learned of Mr. Verdiramo's indictment in alleging a conspiracy to commit perjury and to obstruct justice, he informed me that the allegations were worthless, and that he would be vindicated at trial, and that the matter would not prevent him from representing me fully on my appeal. He assured me that he would prosecute the appeal vigorously, and he was confident that my conviction would be reversed. I was therefore astounded to read in the public press on September 30, 1976 that Mr. Verdiramo had pleaded guilty to one indictment, and that there were, in fact, other indictments against him which would not be prosecuted as a result of his dealings with the government.
 
 
 14
 Appendix at 166-67.
 
 
 15
 The present appeal arises from the denial of DeFalco's claim to vacate his sentence pursuant to 28 U.S.C. § 2255 because of ineffective assistance of counsel on his direct appeal.[3] He argues that adequate representation under the sixth amendment is denied "if counsel, unknown to the accused and without his knowledgeable assent, is in a duplicitous position where his full talents as a vigorous advocate having the single aim of acquittal by all means fair and honorable are hobbled or fettered or restrained by commitments to others." Porter v. United States, 298 F.2d 461, 463 (5th Cir. 1962). He enhances his position by delineating certain arguments which he contends an aggressive appellate lawyer would have urged upon this court on the direct appeal. The district court, after examining Verdiramo's appellate brief, determined that Verdiramo's representation satisfied the standard of "customary skill" established in Moore. It therefore concluded that DeFalco's allegations concerning the impact of Verdiramo's indictment were insufficient, as a matter of law, to establish a violation of the sixth amendment. The district court appears to have reasoned that in the absence of a showing of actual prejudice, no relief was available under the Moore standard.[4]
 
 
 16
 It is true that when an appellant's claim is based on simple incompetence, this court has generally required him to show both a breach of the Moore standard and specific prejudice resulting from that breach. Moore, 432 F.2d at 737; accord, United States ex rel. Green v. Rundle, 434 F.2d 1112, 1115 (3d Cir. 1970). In cases in which the defendant's attorney jointly represented another codefendant, however, we have allowed relief upon a showing of "a possible conflict of interest or prejudice, however remote . . . ." United States ex rel. Hart v. Davenport, 478 F.2d 203, 210 (3d Cir. 1973); Walker v. United States, 422 F.2d 374, 375 (3d Cir.), cert. denied, 399 U.S. 915, 90 S.Ct. 2219, 26 L.Ed.2d 573 (1970). This stricter standard is based upon the recognition that, in cases involving a conflict of interest, it is often difficult or impossible to determine whether the defendant has actually been prejudiced by improper representation. Holloway v. Arkansas, 435 U.S. 475, 490-91, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978). In describing the problem at the trial level, the Court, speaking through Chief Justice Burger, has explained that
 
 
 17
 a rule requiring a defendant to show that a conflict of interests . . . prejudiced him in some specific fashion would not be susceptible of intelligent, evenhanded application. . . . (T)he evil it bears repeating is in what the advocate finds himself compelled to refrain from doing . . . . It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge intelligently the impact of a conflict on the attorney's representation of a client.
 
 
 18
 Id. at 490-91, 98 S.Ct. at 1182. Moreover, apparently legitimate decisions are rendered suspect if made by counsel with conflicting loyalties "because a reviewing court cannot reliably determine to what extent the decisions were based on legitimate tactical considerations and to what extent they were the result of impermissible consideration(s) . . . ." United States ex rel. Sullivan v. Cuyler, 593 F.2d 512, 520 (3d Cir. 1979), cert. granted, 444 U.S. 823, 100 S.Ct. 44, 62 L.Ed.2d 30 (1979). To avoid the appearance as well as the fact of impropriety in the adversary system, doubtful cases are resolved in favor of the defendant.
 
 
 19
 It is for this reason that in representation cases we have emphasized not proof of prejudice, but possibility of prejudice. Thus, speaking through Judge Rosenn, in the context of joint representation, we have said: "The possibility of prejudice lies in the reality of trial practice a given course of action may be advantageous to one defendant but not the other." United States v. Dolan, 570 F.2d 1177, 1180 n.4 (3d Cir. 1978). Judge Rosenn explained:
 
 
 20
 To protect the interests of criminal defendants enmeshed in the midst of our adversarial system of justice, the Sixth Amendment of the United States Constitution guarantees each defendant the "assistance of counsel for his defense." This guarantee "contemplates that such assistance be untrammeled and unimpaired," Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942). Representation of co-defendants by one attorney, when it is possible to discern a prejudicial conflict of interest arising therefrom, is no longer "untrammeled and unimpaired" and will constitute a constitutionally defective denial of effective counsel. Walker v. United States, 422 F.2d 374 (3d Cir.), cert. denied, 399 U.S. 915, 90 S.Ct. 2219, 26 L.Ed.2d 573 (1970).
 
 
 21
 Id. at 1180 (footnotes omitted).
 
 
 22
 The issue before us, then, is whether appellant can establish a legally sufficient risk of prejudice or conflict of interest under Hart to obtain a new appeal by demonstrating that his appellate counsel, unbeknownst to appellant, is under indictment, participating in plea negotiations, and entering a guilty plea for himself in the same court and with the tangential involvement of the sentencing judge from which his client's appeal is prosecuted. We conclude that he can.
 
 
 23
 The adversary system of the common law, as distinguished from the inquisitorial system of the civil law, is regarded in the Anglo-American tradition as the surest method of arriving at the truth when facts are disputed, and for discerning the proper legal precepts to be applied to those facts. These goals are to be achieved by the healthy and forceful presentation of partisan viewpoints. Although the ultimate decision is always the responsibility of the jury and the judge, our system can prosper only when lawyers, as officers of the court, are able to develop the fullest dimensions of the cause being heard. "(The lawyer's) principal responsibility is to serve the undivided interests of his client. Indeed, an indispensable element of the effective performance of his responsibilities is the ability to act independently of the government and to oppose it in adversary litigation." Ferri v. Ackerman, 444 U.S. 193, 204, 100 S.Ct. 402, 409, 62 L.Ed.2d 355 (1979). If there is any constraint on counsel's complete and exuberant presentation, our system will fail because the basic ingredient of the adversary system will be missing. The essence of the system is that there be professional antagonists in the legal forum, dynamic disputants prepared to do combat for the purpose of aiding the court in its quest to do justice. Therefore, if any circumstance impedes the unqualified participation by an attorney, the adjudicatory function is inhibited, ultimately threatening the object of that function, justice in the cause at hand.
 
 
 24
 Appellate courts under the Anglo-American tradition most often entertain assertions of legal error, and a direct appeal usually involves a contention that the trial judge has erred in the choice, interpretation, or application of a legal precept. Although allegations of error in a criminal case are directed at the trial court, they are, more often than not, presented in terms that the error was caused or importuned by the government. Thus, the substance of a criminal appeal usually consists of complaints against both the trial court and the government. For there to be the minimal level of attorney competence on the prosecution of an appeal, counsel must be totally unshackled in his presentation to the appellate court. It is essential that the advocate owe no fealty that conflicts, or even appears to conflict, with the paramount ethical loyalty he owes his client. The competent advocate must stand tall before the appellate tribunal and assert his client's contentions without fear or favor. This is not the posture a defendant in a criminal case assumes as he goes, hat in hand, to negotiate a plea bargain with his adversary. Nor is it the posture a defendant assumes as he appears before the trial court following a plea of guilty to beg the mercy of the court before sentence is pronounced. The cooperative nature of the plea bargaining process involves compromise of positions by both the accused and the government, positions that would have been ardently asserted or defended in a purely adversarial setting. A plea bargain itself is the product of delicate negotiation conducted in an atmosphere of cooperation and give and take.
 
 
 25
 We conclude that inherent emotional and psychological barriers created an impermissible potential of preventing appellate counsel from competing vigorously with the government. The totality of the circumstances presented here, including the facts that DeFalco's appeal emanated from the same district court in which his attorney was indicted, that three of his attorney's indictments were processed, prior to the striking of the plea bargain, before the same district judge who presided over DeFalco's trial, that the same United States Attorney's office prosecuted DeFalco and his lawyer, and that Verdiramo entered into plea bargaining during the pendency of DeFalco's appeal with the same United States Attorney's office that constituted his adversary on appeal, presents, under the rule of Hart, "a possible conflict of interest or prejudice, however remote."[5] We are persuaded that, even without proof of actual conflict of interest, legitimate decisions of counsel were rendered suspect because of the potential for conflicting loyalties to himself and to his client and because, as we have heretofore observed, a reviewing court cannot reliably determine to what extent the decisions were based on legitimate tactical considerations and to what extent they were the result of impermissible considerations. We therefore hold as a matter of law that the standard of normal professional competence cannot have been achieved by appellant's counsel.
 
 
 26
 Thus DeFalco's allegations, if proven, would constitute a deprivation of effective assistance of counsel on appeal, entitling him to a direct appeal de novo. On this record, however, that remedy would be premature. For although the government has conceded the facts of Verdiramo's indictment, it has not admitted that DeFalco was unaware that his attorney had been indicted. The possibility therefore remains that in a factual hearing the government may be able to show a knowing and deliberate waiver by DeFalco of his right to effective assistance of counsel. On remand, unless the government can show such a waiver, a new direct appeal will be ordered on application to this court for vacation of our judgment of October 8, 1976 at No. 76-1028. Because this contention is based on a constitutional deprivation, § 2255 is the proper vehicle for relief. United States v. Addonizio, 442 U.S. 178, 190, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979).
 
 
 27
 We decline to meet the bulk of appellant's remaining contentions relating to trial error in view of the likelihood that on remand he may establish a right to a direct appeal de novo, nunc pro tunc. In the event the district court concludes that he waived his sixth amendment right and is precluded from reprosecuting his direct appeal, he will of course be entitled to an appeal from final judgment in this § 2255 collateral proceeding.
 
 
 28
 We do, however, meet and reject appellant's contention that the trial judge should have recused himself. Measuring the stated allegation and the record before us in this appeal against the precepts announced in United States v. Thompson, 483 F.2d 527 (3d Cir. 1973), and Mayberry v. Maroney, 558 F.2d 1159 (3d Cir. 1977), we conclude that the trial judge did not misuse his discretion in refusing to disqualify himself.
 
 
 29
 The judgment of the district court will be reversed, and the case remanded for proceedings in accordance with this opinion.
 
 
 30
 ROSENN, Circuit Judge, concurring.
 
 
 31
 I agree that the judgment of the district court should be reversed. However, I write separately because of my disagreement with certain portions of the plurality opinion.
 
 
 32
 First, the plurality states that "(t)o avoid the appearance as well as the fact of impropriety in the adversary system, doubtful cases are resolved in favor of the defendant." At 135 (emphasis added). Later in the opinion this position is restated: "It is essential that the advocate owe no fealty that conflicts, or even appears to conflict, with the paramount ethical loyalty he owes his client." Id. at 136 (emphasis added). I do not believe, however, that the mere appearance of a conflict of interest on the part of appellate counsel, of itself, violates the sixth amendment's guarantee of effective assistance of counsel.
 
 
 33
 In United States ex rel. Hart v. Davenport, 478 F.2d 203 (3d Cir. 1973), we considered a claim of ineffective assistance of counsel because of defense counsel's joint representation of co-defendants. There we ordered a new trial because of "a possible conflict of interest or prejudice, however remote." We arrived at that decision, however, only after having examined the record and finding indications of such a possible prejudicial conflict. Thus, we noted "(t)he absence of a meaningful closing argument on Hart's behalf." Id. at 208. Further, we observed that "(t)he record of the State proceedings . . . establishes that there were among the defendants in the trial conflicting interests." Id. at 209.
 
 
 34
 In United States ex rel. Horta v. DeYoung, 523 F.2d 807, 808 (3d Cir. 1975) (per curiam), we again found "a 'possible conflict of interest or prejudice.' " As in Hart that conclusion was based on an examination of the record. Thus, we noted that "(a) counsel looking only to petitioner's interest should have asked for an instruction . . . limiting the admissibility of the surveillance evidence to the male defendants." Id. at 809. Further, we commented on "(t) he inadequate cross examination of key government witnesses" and the fact that "(d)efense counsel made no effort to capitalize on . . . (the) contradiction in the state's case." Id. at 810.
 
 
 35
 Similarly, in United States ex rel. Sullivan v. Cuyler, 593 F.2d 512 (3d Cir. 1979), cert. granted, 444 U.S. 823, 100 S.Ct. 44, 62 L.Ed.2d 30 (1979), we based our finding of a "possibility of prejudice or conflict of interest" upon "(o)ur examination of the record." Id. at 521. We noted that "(t)he critical decision counsel made . . . was to rest at the close of the Commonwealth's case without presenting petitioner's testimony or other evidence on his behalf." Id. Thus, "(a) finding of dual representation does not, without more, require reversal." Id. at 519.
 
 
 36
 In the case before us, we are not presented with the mere appearance of a prejudicial conflict but with indications that such a conflict actually existed. As Judge Aldisert notes, DeFalco's appeal emanated from the same court in which his counsel was indicted. Three of Attorney Verdiramo's indictments were processed prior to the consummation of his plea bargain by the United States Attorney's Office that was also prosecuting DeFalco and before the same judge who had presided at DeFalco's trial. Also critical is counsel's entry into plea negotiations with the same United States Attorney's Office with which he was in contention on DeFalco's then pending appeal in this court. Thus, counsel was seeking to negotiate the best possible bargain in this personal behalf from the prosecution while at the same time opposing them in a pending criminal appeal.[1] The risks that an attorney so involved might sacrifice the interests of his client in an effort to advance his own are too glaring for a court to tolerate, absent the client's knowing and intelligent waiver. Thus, the situation borders on the edge of actual conflict of interest. If it does not precisely reach that level, it is one which makes it impossible for anyone to know, including the defendant or the reviewing court, whether the attorney's tactical decisions, counseling of his client, or his arguments to the court were adversely affected in the expectation that counsel's personal plea bargaining might be enhanced. Thus, the possibility even the probability of prejudicial conflict is obvious.
 
 
 37
 Second, I disagree with the plurality's assertion that "(i)f there is any constraint on counsel's complete and exuberant presentation, our system will fail." Plurality op. at 136. It is of course true that there are some constraints which are inherently suspect. Dual representation of a co- defendant at trial is one such constraint. See United States ex rel. Sullivan v. Cuyler, supra; United States ex rel. Hart v. Davenport, supra. Indictment of appellate counsel, unbeknownst to the defendant, may well be another. Nevertheless, there are some constraints that are clearly permissible and even desirable, e. g., those set forth in the Federal Rules of Civil, Criminal, and Appellate Procedure and the Federal Rules of Evidence.[2] Thus, we have indicated that "statements by counsel of their personal conviction of the merits of their client's cause should always be avoided (at trial)." United States v. Benson, 487 F.2d 978, 981 (3d Cir. 1973).[3] Where such statements can be fairly construed to be based on facts not in evidence we have held this to constitute reversible error. United States v. Schartner, 426 F.2d 470 (3d Cir. 1970). Contrary to the plurality's assertion, the relevant inquiry is not whether there is "any constraint on counsel's complete and exuberant presentation" but whether there is an impermissible constraint that precludes counsel's full and effective representation of his client within the bounds set by applicable rules and appropriate ethical considerations.
 
 
 38
 Finally, I disagree with the plurality's conclusion that "inherent emotional and psychological barriers created an impermissible potential of preventing appellate counsel from competing vigorously with the government." Plurality op. at 136. I believe the standard this suggests is speculative, imprecise, and incapable of application. Its use would hinder rather than help a reviewing court in adjudicating sixth amendment claims. Furthermore, there is nothing in the record that indicates the presence of such emotional and psychological barriers. The idea that emotional barriers can be "inherent" seems to be self-contradictory. If a response to the stimuli of a given situation is emotional, then I fail to perceive how it can be "inherent."On the other hand, I agree that under the facts of this case there may be an actual conflict of interest or a situation so fraught with unreasonable risks of a conflict of interest that it should not be countenanced in the absence of a knowing and intelligent waiver by the defendant. Thus, I join in voting to reverse the judgment of the district court and in remanding for further proceedings not inconsistent with this opinion.
 
 
 39
 SEITZ, Chief Judge, dissenting.
 
 
 40
 In these collateral proceedings, those constituting the majority in effect vote to reverse the judgment entered on the direct appeal affirming DeFalco's judgment of conviction. They do so on the basis of their conclusion that the totality of the circumstances surrounding the direct appeal created a possible conflict of interest that denied DeFalco competent counsel on appeal as a matter of law.
 
 
 41
 I dissent because I do not believe the circumstances call for the application of a conflict of interest rule that precludes inquiry into the competency of the performance actually rendered on the appeal. Every conflict of interest case has two aspects: the existence of a conflict of interest, and the prejudice resulting therefrom to the defendant. In joint representation cases, once there is a showing of a remote possibility of conflict of interest, prejudice is presumed. An examination of both of these aspects reveals the inappropriateness of applying this rule in this context.
 
 
 42
 First, the plurality relies on psychological factors for inferring the existence of a conflict of interest. They attempt to limit the legal precept adopted to the circumstances of this case. The reality is that such an approach could have profound implications because of the decisive weight given speculative psychological factors. Indeed, such speculativeness is illustrated by this case. For example, Verdiramo filed his brief for the defendant in this court on May 3, 1976. Although the record does not reveal the precise date, his plea bargaining in his own case apparently did not begin until later, some time in the summer of 1976. Thus even if psychological speculation were a proper basis for application of conflict of interest rules, one cannot be sure those psychological pressures were present here.
 
 
 43
 Second, the rationale for presuming prejudice in the joint representation cases does not apply to the present context. The reasoning in the joint representation cases, relied on by those in the majority, is that it is often difficult or impossible to determine whether the defendant has actually been prejudiced by such representation. Holloway v. Arkansas, 435 U.S. 475, 490-91, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); U. S. ex. rel. Hart v. Davenport, 478 F.2d 203, 210 (3d Cir. 1970). The reason for presuming prejudice in joint representation cases is largely, if not entirely, absent in the present context. If adequate representation at the trial is postulated,[1] it is not difficult for other counsel to attempt to demonstrate in collateral proceedings whether the defendant's appellate representation measured up to acceptable standards. This can be done by reviewing the trial transcript against the appellate brief (here there was no oral argument), buttressed by testimony, if necessary, to determine if all issues of substance were properly raised on appeal or were omitted for sufficient reason.[2] Thus the difficulty of ascertaining prejudice found in the joint representation cases simply is not present.
 
 
 44
 In short, the fact situation here neither supports an inevitable finding that a conflict of interest exists nor requires that prejudice be presumed. I am satisfied that the possible impact of the speculative concerns expressed by the plurality are fully aired and assessed by applying accepted competency standards.
 
 
 45
 The concurring opinion purports to reject psychological factors as a basis for its conclusion. It relies on what it says may be an actual conflict arising from the position of plea bargaining with the United States Attorney on the attorney's own behalf and about the same time representing a client on a direct criminal appeal from the same district. Passing over the untoward premises on which the argument is constructed, the short answer is that consideration of the appellate record and pertinent testimony is sufficient to permit a reliable determination by the district court as to the level of appellate competency provided.
 
 
 46
 Because the district court did not address the competency of counsel issue on the merits, I would remand to the district court for an evidentiary hearing and determination as to whether Verdiramo's appellate representation fell below the standard required by Moore v. United States, 432 F.2d 730 (3d Cir. 1970) (in banc), and, if it did, whether DeFalco was prejudiced. By prejudice I mean that a particular issue of some substance on which the defendant has an arguable chance of succeeding was not advanced and was not apparent to the court on direct appeal.[3]
 
 
 47
 ADAMS, Circuit Judge, dissenting.
 
 
 48
 The primary issue presented by this appeal, in my view, is whether an attorney who has been suspended by one of the district courts of this circuit after pleading guilty to criminal charges may represent a client before this Court. Because I believe that such representation would diminish the integrity of the appellate process, I conclude that he may not do so. Thus, unlike the plurality, I do not believe it necessary to address the question whether DeFalco consented to Verdiramo's continuing representation after Verdiramo appeared to decide that the indictments were meritorious and began negotiating a guilty plea. Rather, I would vacate the judgment affirming DeFalco's conviction entered by this Court on October 8, 1976, and permit DeFalco to retain different counsel to present his appeal anew.
 
 I.
 
 49
 The facts pertinent to the resolution of this appeal may be briefly summarized: On January 8, 1976, Albert DeFalco, convicted in federal court in New Jersey of conspiracy and impersonation of a federal official and sentenced to six years imprisonment,[1] retained Vincent Verdiramo, Jr., a New Jersey attorney, to prepare his appeal. At that time, there were three federal indictments pending against Verdiramo. Verdiramo filed a brief on behalf of DeFalco with this Court on May 3, 1976. In June, Verdiramo was named as an unindicted coconspirator in a fourth indictment. Thereafter, Verdiramo, unbeknownst to DeFalco, began negotiations that resulted in his entry of a guilty plea in the United States District Court in New Jersey on September 28, 1976. Although DeFalco knew of the original three indictments, Verdiramo apparently assured him that the allegations were "worthless," that Verdiramo would be vindicated at his trial, and that the indictments would not prevent Verdiramo from presenting DeFalco's appeal. DeFalco claims, however, that he did not know until September 30 that Verdiramo was engaged in plea bargaining with the United States Attorney, or that he had pleaded guilty to some of the charges.[2] On the day Verdiramo entered his guilty plea, the district judge suspended him "from further practice of law in the United States District Court for the District of New Jersey."[3] Eight days later, on October 6, with Verdiramo still acting as counsel, DeFalco's appeal was submitted without oral argument to this Court. On October 8, the Court addressed the merits of the appeal and affirmed DeFalco's conviction.[4] Thus, as the plurality observes, "while DeFalco's appeal was still pending in this court, eight days before the scheduled date of disposition of his appeal, his attorney had entered into a plea bargain, had pleaded guilty, and had been suspended from practicing law in the United States District Court for the District of New Jersey."[5] This Court, of course, did not know at the time that Verdiramo had pleaded guilty only ten days before and had been suspended from the practice of law.
 
 II.
 
 50
 On the basis of these facts, the plurality holds that DeFalco is entitled to a new appeal unless, on remand, the district court finds that he knowingly and deliberately waived his Sixth Amendment right to effective assistance of counsel by learning of Verdiramo's plea negotiations and guilty plea and by consenting to his continued representation.[6] This result is compelled, the plurality reasons, because under the circumstances "inherent emotional and psychological barriers created an impermissible potential of preventing (Verdiramo) from competing vigorously with the government."[7] In contrast to Chief Judge Seitz and Judge Garth, the plurality finds no need to order the district court on remand to determine whether DeFalco was prejudiced by Verdiramo's actions,[8] for, as I understand its opinion, the plurality believes that the emotional and psychological barriers assertedly present when an attorney is under indictment and engaged in plea bargaining create a conclusive presumption of prejudice to his client.
 
 
 51
 Whether there existed on DeFalco's direct appeal emotional and psychological barriers to effective and vigorous representation is difficult for this Court or any tribunal to discern.[9] Because of this difficulty, I would be inclined to agree with the result articulated by the plurality if it were necessary to reach that question in order to dispose of this case. A prophylactic rule of presumed prejudice would spare the courts the intractable task of assessing whether an attorney's presentation of an appeal was as vigorous as it might have been had the attorney not been under indictment and considering or engaged in plea negotiations with the prosecution. To decide this case, however, it is not necessary, in my view, to presume prejudice or even to determine whether, knowing of Verdiramo's indictment and plea negotiations and despite the possibility of prejudice, DeFalco consented to Verdiramo's representation of him.
 
 
 52
 As I see it, the case turns on the more narrow question whether this Court should permit an attorney who has been suspended during the pendency of his client's appeal to continue, after the suspension has been imposed, to represent his client. I would hold that we should not sanction such an arrangement.
 
 
 53
 The integrity of the Court, and of the judicial process generally, depends in large part on the qualifications of the attorneys who practice before it. Members of the public who turn to the judicial process to resolve their disputes, or who are drawn into legal controversies, justifiably expect both to be treated fairly by the courts and to have the assistance of ethical as well as able counsel. To fulfill these expectations, the Supreme Court has established standards of professional competency and moral character to which attorneys who practice before the federal courts must adhere.[10] For reasons of practicality and convenience, this Court permits persons who have been admitted to the bar of one of the states or another federal court and thereby adjudged in at least one jurisdiction to be morally and professionally fit to practice law to prepare and submit briefs to it.[11] Thus, so long as an attorney is a member in good standing of the bar of another court, he may represent clients before this Court.
 
 
 54
 Prior to his suspension, Verdiramo was such an attorney. Although he was a member of the bar of the United States District Court for New Jersey,[12] he was not a member of the bar of this Court. Having permitted Verdiramo to file papers and briefs in this Court based in large part on the district court's judgment that he was "morally and professionally" qualified, I believe that it is incumbent on the Court to recognize the decision by the district court to suspend Verdiramo for his participation in the crimes for which he was convicted.[13] Consequently, when Verdiramo was disqualified from practicing before the New Jersey District Court on September 28, 1976, I would hold that he became ineligible to represent DeFalco before this Court as of that same date.[14] In essence, at the time this Court passed on DeFalco's appeal, he was not represented by qualified counsel.[15] The Court, I believe, has a duty to the public to refuse to countenance such a situation, and the best means of discharging this duty would be to decline to recognize Verdiramo's continued representation of DeFalco following the suspension. Because the Court has an obligation to the public and to itself not to permit disqualified attorneys from practicing before it, the result should not be altered even if DeFalco knew of Verdiramo's guilty plea and consented to his continued representation. To my knowledge, a defendant does not have a right to be represented by a suspended or otherwise unqualified attorney.[16]
 
 
 55
 Accordingly, I respectfully dissent from the judgment remanding the case to the district court for a determination whether DeFalco knowingly and deliberately waived his right to effective assistance of counsel. Instead, I would vacate the judgment entered on October 8, 1976 that affirmed DeFalco's conviction, and would permit him to retain different counsel for the purpose of preparing a new brief and, if the Court believes it appropriate, orally arguing DeFalco's appeal.
 
 GARTH, Circuit Judge, dissenting:
 
 56
 I join Chief Judge Seitz' persuasive dissent. I write separately because it appears to me that despite protestations to the contrary, see Plurality Op. at p. 136 and note 5, Concurring Op. at p. 138, there can be no doubt that both the plurality opinion and Judge Rosenn's opinion promulgate a per se rule that an indicted attorney cannot effectively represent his client. Not only is such a rule inappropriate in my view, but it has potentially grave consequences which apparently were not contemplated by the plurality or, if contemplated, were ignored.
 
 
 57
 The facts of this case belie any claim that the plurality holding is, in any sense, a limited one. Verdiramo had been indicted a total of three times in the years 1974 and 1975. In early January, 1976, Verdiramo was engaged to represent DeFalco in his appeal to this court.[1] On May 3, 1976, Verdiramo filed an appellate brief on behalf of DeFalco. At that time, Verdiramo's work, on DeFalco's appeal was complete. Absent a court order for oral argument, and there was no such order, there was nothing further for Verdiramo to do. See note 5 infra. One month after filing DeFalco's brief, Verdiramo was again indicted at No. 76-201-4. Six months after the completion and filing of DeFalco's brief, Verdiramo, for the first time, changed his "not guilty" plea on indictment 76-201-4, to "guilty."[2] One week later, on October 6, 1976, DeFalco's case was submitted on only the briefs to this court; it was affirmed by judgment order two days later.
 
 
 58
 In his opinion denying § 2255 relief to DeFalco, Judge Lacey specifically found that Verdiramo's guilty plea was "neither consummated nor contemplated until after DeFalco's case had been submitted to the Court of Appeals (which decided no oral argument was necessary)." Govt.App. at 11A n. 11.[3] Thus it cannot be disputed that all of Verdiramo's appellate work pertaining to DeFalco's appeal had been completed no less than six months prior to Verdiramo's suspension from the practice of law by the district court,[4] and as Judge Lacey found, Verdiramo had not even contemplated pleading guilty until sometime after the DeFalco briefs were filed.
 
 
 59
 In light of these uncontested facts, it is crystal clear that the plurality's and Judge Rosenn's holdings are predicated on the fact of Verdiramo's indictment alone.[5] If a potential conflict can be presumed in this case, it must be presumed in every case where a defendant is represented by an attorney who has been indicted. Moreover, the logic of the plurality opinion would seem to compel the conclusion that an attorney whose partner or associate had been indicted, cannot effectively represent a criminal defendant either. For an attorney in that situation would certainly owe "fealty that conflicts, or . . . appears to conflict, with the paramount ethical loyalty he owes his client." Plurality Op. at 136. I cannot accept this logic nor the flawed conclusion which flows from it.
 
 
 60
 Chief Judge Seitz aptly demonstrates that there is no reason to presume either conflict or prejudice in this case. I would also point to the consequence of the per se rule which flows from the plurality's presumptions. By granting collateral relief to those persons who cannot demonstrate conflict or prejudice, cf. United States v. Timmreck, 441 U.S. 780, 99 S.Ct. 2085, 60 L.Ed.2d 634 (1979), but who assert that their attorneys were under indictment, or that their attorneys had partners who were under indictment at the time of the proceeding in question, the plurality has created a situation which will result in untold additional litigation. It is unfortunate, but nevertheless the fact, the many defense attorneys, including some of the most prominent at the bar, have at one time or another come under indictment. By its actual holding in this case, the plurality would grant relief to all former clients of those attorneys or of their firms, without requiring any showing of possible conflict and prejudice. The plurality thus creates an invitation to collateral litigation which will not likely be turned down.
 
 
 61
 In sum, the plurality has created a per se rule which is illogical, uncalled for and unsound. By presuming both conflict and prejudice without the need for demonstrating either, a plurality of this court has proceeded far beyond the limits which we have previously set in joint representation cases. See, e. g. United States ex rel. Hart v. Davenport, 478 F.2d 203 (3d Cir. 1973). It has done so, moreover, in a case with an exceedingly thin record,[6] and in the face of undisputed facts which do not support its discussion or the purported grounds of its decision. Accordingly, I must respectfully dissent.
 
 
 62
 SLOVITER, Circuit Judge, dissenting.
 
 
 63
 It may be that an indicted attorney negotiating on his or her own behalf faces "inherent emotional and psychological barriers" which prevent the attorney from competing vigorously with the government on behalf of a client. No citation to authority for that proposition is given in the plurality opinion. Before an irrebuttable presumption of potential conflict is based on that assumption, some evidence of its validity is needed other than the court's a priori belief that it is so.
 
 
 64
 Although the plurality opinion attempts to limit its holding to the specific fact situation presented, it is unlikely that the holding articulated here will not be extended to presume ineffective assistance of counsel by any indicted attorney, absent waiver. If so, the plurality, in a well-meaning attempt to protect a defendant from prejudice which may not have occurred, may perpetrate an injustice at least as severe as that which it seeks to avoid. The plurality's holding in this case may undermine other values and rights of at least comparable stature under our Anglo-American tradition of law.
 
 
 65
 An attorney under indictment is under the same presumption of innocence as any other citizen. "Like the school teacher in Slochower v. Board of Education, 350 U.S. 551, (76 S.Ct. 637, 100 L.Ed. 692), and the policeman in Garrity v. New Jersey, (385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562), lawyers also enjoy first-class citizenship." Spevack v. Klein, 385 U.S. 511, 516, 87 S.Ct. 625, 628, 17 L.Ed.2d 574 (1967). The irrebuttable presumption of inability to render effective legal service and the concomitant obligation to give each client or prospective client full details about the attorney's legal situation will have an inevitable adverse effect on the attorney's livelihood. Prospective clients are likely to choose other counsel, at least until the attorney's own legal problems are resolved, thereby effectively depriving the attorney of the ability to practice law during the pendency of the indictment. The possibility that a client may waive the right to effective assistance of counsel can provide little comfort to an attorney who may, in fact, have been unjustly accused. What reasonable client can be expected to retain an attorney under indictment when this court bases its holding on its belief in the risk that the attorney will sacrifice the interests of the client in an effort to advance the attorney's own interest?
 
 
 66
 Thus the mere accusation represented by an indictment is being transformed into a presumption of incompetency or infidelity. The plurality's unsupported presumption represents an unwarranted and dangerous derogation of the fundamental constitutional right to be presumed to be innocent until proven guilty.[1]
 
 
 
 [1]
 Indictment No. 74-313 had been returned against Verdiramo on August 6, 1974, charging violations of 18 U.S.C. §§ 371, 1503, and 2512. A second indictment had been returned against him May 15, 1975 at No. 75-221 and was dismissed by Judge Lacey on December 17, 1975. A third indictment was returned December 4, 1975 at No. 75-521-1 charging him with, inter alia, mail fraud under 18 U.S.C. § 1341
 
 
 [2]
 See Verdiramo Rule 11 transcript 4-5
 Judge Lacey, in addition to presiding at No. 74-313, had also been assigned the Verdiramo indictment at No. 75-521-1 at which Verdiramo had entered a plea of not guilty on December 12, 1975. The judge had presided over a multitude of motions and hearings and entered orders on this particular indictment on January 26, 1976, January 30, 1976, April 20, 1976, May 20, 1976, May 26, 1976, May 28, 1976, June 1, 1976, June 2, 1976, September 23, 1976, and September 24, 1976. Indictment No. 75-521-1 apparently was dismissed as against Verdiramo as a result of the plea bargain at No. 76-201-4 consummated on September 28, 1976. Indictment No. 74-313 was also eventually dismissed on September 21, 1977.
 
 
 [3]
 DeFalco moved for other relief in his § 2255 motion including, inter alia, disqualification of the trial judge, as well as a new trial based on allegations of newly discovered evidence and failure of the government to disclose certain materials as required by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)
 
 
 [4]
 The litigants before us do not challenge the relevance of the sixth amendment to the contentions presented in this appeal. This appeal implicates a criminal prosecution by the federal government. The sixth amendment provides explicitly: "In all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defense."
 
 
 [5]
 It is elementary law that all these facts are essential ingredients in the rule we suggest today. A legal rule is a legal precept attaching a definite detailed legal consequence to a definite detailed state of facts. Addonizio v. United States, 573 F.2d 147, 151 (3d Cir. 1978), rev'd on other grounds, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). Judge Garth's insistence, in which Judge Sloviter concurs, that our conclusion is predicated solely on the indictment of Verdiramo requires us to state what we consider to be obvious: This is not a case of mere indictment of a lawyer; it is indictment plus plea bargaining plus entry of a plea of guilty. The presumption of innocence no longer applies after a defendant in a criminal proceeding enters a plea of guilty. The law plucks the cloak of innocence from the shoulders of a pleader whether a layperson or lawyer as soon as he admits guilt. Thus, the rule we announce today offends neither the presumption of innocence generally, nor the presumption of innocence that applies to a lawyer who, though indicted, has not been adjudged, nor pleaded, guilty
 Judge Weis would go even further in responding to the presumption of innocence argument in the dissenting opinions. He notes that the court has previously suggested that the presumption of innocence does not serve as the source for the substantive rights of pretrial detainees. "Rather, the presumption allocates the burden of proof. It is a principle of evidence, 9 J. Wigmore, Evidence § 2511 (3d ed. 1940), acting as the foundation for the procedural due process requirement of proof beyond a reasonable doubt." Hampton v. Holmesburg Prison Officials, 546 F.2d 1077, 1080 n.1 (3d Cir. 1976) (citations omitted).
 
 
 [1]
 It is true, as Judge Garth indicates, that DeFalco's brief was filed prior to Verdiramo's indictment. Garth, J., dissenting op. at 144. One cannot say, however, that Verdiramo's representation of DeFalco was indisputably complete at that point. There are other actions which Verdiramo could have taken in his representation of DeFalco but did not. As Judges Garth and Adams note, Verdiramo could have filed a reply brief, supplemental brief, if appropriate, or requested oral argument. See Garth, J., dissenting op. at 145, n. 5; Adams, J., dissenting op. at 143 n. 15. Under applicable rules Verdiramo could only have taken those actions after the filing of the Government's brief. This occurred on June 25, 1976, after the indictment on June 2, 1976. Thus, the actions that he could have taken in behalf of DeFalco prior to his plea of guilty on September 28, 1976, necessarily would have occurred during the period when Verdiramo was presumably considering or engaging in plea bargaining. Thus, my position and that of the plurality are not "predicated on the fact of Verdiramo's indictment alone," as Judge Garth asserts. Garth, J., dissenting op. at 145. Instead, I believe that a combination of factors combined to create a virtual conflict of interest which rendered Verdiramo's representation of DeFalco constitutionally insufficient, unless waived
 
 
 [2]
 There are some constraints that are even more basic. For instance, as the Court of Appeals for the District of Columbia has observed, "although a lawyer has a duty to defend vigorously the rights of his clients, there is a corollary obligation that he conduct himself with decorum." Kinoy v. District of Columbia, 130 U.S.App.D.C. 290, 292-293, 400 F.2d 761, 763-64 (D.C.Cir. 1968) (footnote & citation omitted)
 
 
 [3]
 Section 7.8(b), ABA Standards, The Defense Function (App.Draft 1971) states: "It is unprofessional conduct for a lawyer to express his personal belief or opinion in his client's innocence or his personal belief or opinion in the truth or falsity of any testimony or evidence, or to attribute the crime to another person unless such an inference is warranted by the evidence."
 
 
 [1]
 Verdiramo was not defendant's counsel at trial. In his motion for § 2255 relief, defendant argued that Verdiramo failed to raise on direct appeal the denial of defendant's motion (made right before trial) to substitute trial counsel for inadequate factual investigation. He did not, however, claim ineffective assistance of trial counsel as a ground for § 2255 relief
 
 
 [2]
 I use the word "issues" here because the question is not whether all possible theories as to each issue were advanced on direct appeal, but rather whether the issues themselves were apparent to the reviewing court
 
 
 [3]
 I do not reach the remand ordered by the majority to obtain a waiver determination, assuming the propriety of an informal waiver in the circumstances. Nevertheless, my position is not meant to imply there are not circumstances in which an indicted attorney should bring that fact to the attention of his client
 
 
 [1]
 DeFalco was convicted on four counts. The district judge sentenced him to three years on count two, three years on count three to run consecutively to the term on count two, three years on count fourteen to run concurrently with the term on count two, and five years on count one to run concurrently with the terms on counts two and three
 
 
 [2]
 See plurality opinion, supra, at 134
 
 
 [3]
 As Judge Garth notes, opinion of Judge Garth, infra, at 145 n. 4, the district judge may not have comported strictly with the rules of the district court. See N.J.Dist.Ct.R. 7
 
 
 [4]
 United States v. DeFalco, 546 F.2d 419 (3d Cir. 1976) (affirming by judgment order), cert. denied, 430 U.S. 965, 97 S.Ct. 1644, 52 L.Ed.2d 356 (1977)
 
 
 [5]
 Plurality opinion, supra, at 134
 
 
 [6]
 Id. at 136
 
 
 [7]
 Id. at 136
 
 
 [8]
 See opinion of Chief Judge Seitz, dissenting, supra, and opinion of Judge Garth, dissenting, infra
 
 
 [9]
 See opinion of Judge Rosenn, concurring, supra, at 139
 
 
 [10]
 Fed.R.App.P. 46(a) provides in part:
 An attorney who has been admitted to practice before the Supreme Court of the United States, or the highest court of a state, or another United States Court of Appeals, or a United States district court (including the district courts for the Canal Zone, Guam and the Virgin Islands), and who is of good moral character, is eligible for admission to the bar of a court of appeals.
 (emphasis added).
 Before an attorney may be admitted to the bar of this Court, we require that a present member of the bar certify that the applicant is "a member of the bar in good standing" of one of the courts listed in Rule 46(a), supra, and that the applicant's "private and professional character is good." United States Court of Appeals for the Third Circuit Application for Admission to Practice, Motion and Certificate.
 
 
 [11]
 From time immemorial, it has been the practice of this Court, however, to require an attorney to be admitted to the bar of the Court before he may orally argue an appeal
 
 
 [12]
 As of the date of this writing, Verdiramo has not applied to be reinstated to the bar of the District Court for the District of New Jersey
 
 
 [13]
 Verdiramo was suspended by the district court because he had been convicted of a crime involving moral turpitude
 
 
 [14]
 Verdiramo did not contest his suspension by the district court
 
 
 [15]
 Verdiramo's professional infirmity may have resulted, as the plurality argues, in incompetent representation of DeFalco. For example, Verdiramo did not file a reply brief. Nor is there any indication in the record that Verdiramo asked the Court for oral argument. See 3d Cir. R. 12(6)(b). Indeed, Verdiramo's suspension would have precluded his admission to the bar of this Court and thereby prevented him from orally arguing DeFalco's appeal. Thus, contrary to Judge Garth's suggestion, opinion of Judge Garth, dissenting, infra, at 144, Verdiramo's work should not be considered complete upon his filing the appellant's brief on May 3, 1976. He could have filed a reply to the government's brief which was received on June 25, filed supplemental briefs if they became appropriate, and, had he not been suspended, sought to argue the case before the Court on October 6. Although, as Judge Garth points out, the date for filing a reply brief or requesting oral argument had passed by the time of Verdiramo's suspension, this Court has been liberal in permitting extensions of time for these purposes. Moreover, after Verdiramo's suspension, another attorney filed on behalf of DeFalco a petition for rehearing as well as a petition for certiorari. When these facts are considered, it is difficult, in my view, to maintain that the task of representing DeFalco had ended prior to Verdiramo's suspension
 
 
 [16]
 The concern expressed by Judges Garth and Sloviter that the plurality's opinion will unfairly preclude attorneys who are under indictment and engaged in plea negotiations from practicing their profession, see opinion of Judge Garth, dissenting, infra, at 144; opinion of Judge Sloviter, dissenting, infra, at 146, would not be applicable to the approach I have taken. Because suspension or a disbarment would be the triggering device of the analysis I have made, it is not necessary for me to reach the questions that they raise
 
 
 [1]
 DeFalco's affidavit, which is quoted in the plurality opinion, indicates that he was aware of Verdiramo's indictment before Verdiramo had actually begun work on the appeal. DeFalco stated in his affidavit that he was unaware, when he retained Verdiramo, that Verdiramo had committed any acts which could lead to his disqualification. But this does not necessarily mean that DeFalco was unaware of Verdiramo's indictment at that time
 Furthermore, DeFalco's affidavit states that Verdiramo, discounting his indictment, told DeFalco that "he would prosecute the appeal vigorously . . . ." This language indicates that Verdiramo had not yet begun working on the appeal.
 
 
 [2]
 Apparently the other indictments against Verdiramo, to the extent that they had not been dismissed earlier, were merged in the plea bargain
 
 
 [3]
 This finding undercuts the factual basis for Judge Rosenn's concurrence that there was an actual conflict of interest because Verdiramo was plea bargaining on his own behalf while simultaneously representing DeFalco on a direct appeal from the same district
 
 
 [4]
 Verdiramo was suspended from practicing before the District Court on September 28, 1976, by the same district court judge who sentenced him on that date. Inasmuch as Verdiramo had never sought admission to the bar of this court, he could not have been suspended from this court, but only denied admission if he were to seek it. However, because no oral argument had been ordered, and because this Circuit requires only those who argue orally before it to be admitted, there would be no occasion for this issue to arise. Indeed, I have personally urged that all attorneys whose names appear upon briefs or other papers submitted to this court, be required to be members of our bar, particularly since we do not require oral argument in a substantial number of the appeals filed in this Circuit. However, I have been unsuccessful in having this position adopted
 While I draw no conclusions from the procedure utilized by the district court in suspending Verdiramo, I do observe that there is no provision for such suspension in the Rules of the United States District Court for the District of New Jersey. Indeed, Rule 7 of those Rules, entitled "Discipline of Attorneys," provides that the Chief Judge, who was not the sentencing judge in Verdiramo's case, shall have charge of all disciplinary matters and that an order to show cause be issued with a hearing 30 days after service on the respondent attorney. Thus, it is evident that the sentencing judge did not comply with Rule 7. Therefore, given the fact that Verdiramo did not plead guilty until September 28, 1976, under its own Rules, the district court could not have disqualified Verdiramo until well after October 8, 1976, the date on which this court disposed of DeFalco's appeal.
 Even assuming a waiver of the local rules, or an otherwise valid suspension no prejudice could have been visited upon DeFalco by Verdiramo's suspension. As noted in text, Verdiramo had taken all actions on behalf of his client long before the date of the suspension. Thus, this is not a situation where an attorney while under a suspension or disbarment order is required to take some action on behalf of his client. In such a case, I would agree that the client would be prejudiced without more. But if the position urged by Judge Adams were carried to its logical conclusion, we would be required to vacate every criminal case which was affirmed, after submission on the briefs, where a defense attorney had been suspended, by any court, after all appellate representation had been completed. This would be so even though those attorneys would never have had to become members of the bar of this court. I fail to see how constitutional prejudice could inhere in such cases.
 
 
 [5]
 Judge Adams's dissent has taken a different approach than that taken by the plurality. He would hold that Verdiramo's suspension is the primary issue on this appeal, because immediately upon an attorney's suspension by the district court, he would not permit the attorney to represent his client in this court, as such representation would not be by qualified counsel. (Opinion of Judge Adams, dissenting, supra, pp. 142, 143). However, the record reveals that Verdiramo's representation was completed long before his suspension and therefore his representation of DeFalco cannot for that reason be deemed unqualified
 As noted, DeFalco's appellate brief had been filed with this court's clerk on May 3, 1976. The Government's answering brief was filed June 25, 1976. Fed.R.App.P. 31 (with an exception not relevant here), permits the appellant to file a reply brief within 14 days thereafter, so in this case the outside date would be July 9, 1976. In any event, this Circuit's Internal Operating Procedures provide that all briefs are to be furnished to the merits panel four full weeks prior to the panel's sitting (I.O.P.I.A.), which here would have been September 7, 1976. Orders for oral argument are determined no later than 10 days prior to a panel sitting (I.O.P.II.A.). In this case the last date for such order would have been September 24, 1976. Moreover, although oral argument may be requested by a party, such request must be made within seven days after the filing of the appellee's brief. On this record July 2, 1976 would have been the outside date. It should be noted, moreover, a motion for stay, a petition for rehearing en banc and a petition for a writ of certiorari were all filed on behalf of DeFalco after this court's judgment order of October 8, 1976. These actions were taken by counsel other than Verdiramo.
 It is therefore apparent that no actions taken by Verdiramo on DeFalco's behalf were taken after Verdiramo's suspension on September 28, 1976. Furthermore, the time for any theoretical further actions which could have been taken in the representation of DeFalco had expired prior in time to Verdiramo's suspension. Thus on the record of this case, the fact of Verdiramo's suspension is irrelevant to any issue implicating the constitutional right to effective assistance of counsel and is therefore irrelevant to any issue on this appeal.
 
 
 [6]
 Although I agree with Chief Judge Seitz that we should remand for an evidentiary hearing as to conflict and prejudice, I cannot help but note the frailness and transparency of DeFalco's claims which were raised before Judge Lacey and which have been presented before us. I also observe that had DeFalco, in his present endeavors, complied with our circuit's precedent, the recent proceedings might well have been avoided. See Rivera v. United States, 477 F.2d 927 (3d Cir. 1973)
 
 
 [1]
 I agree with Chief Judge Seitz and Judge Garth that we should remand for an evidentiary hearing as to conflict and prejudice. I also agree with Judge Adams that it would have been preferable for the court to have considered the effect of the attorney's suspension on his qualification to continue representation of the client during the pendency of an appeal. This might have obviated the necessity for reaching the difficult issues raised by the various opinions in this case