**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Robert EDEBOHLS, Defendant–Appellant.**

**No. 94CA0911.**

Colorado Court of Appeals, Div. I.

Nov. 29, 1996.

Rehearing Denied Feb. 20, 1997.

Certiorari Denied Oct. 20, 1997.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, M. Catherine Duba, Assistant Attorney General, Denver, for Plaintiff–Appellee.

David F. Vela, State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, for Defendant–Appellant.

Opinion by Judge METZGER.

Defendant, Robert Edebohls, appeals the judgment of conviction entered on a jury verdict finding him guilty of violating the Colorado Organized Crime Control Act (the Act), § 18–17–101, et seq., C.R.S. (1986 Repl. Vol. 8B). We reverse and remand with directions.

On December 18, 1992, defendant was charged in a multi-count indictment alleging that he violated the Act by participating in a large cocaine distribution network in Summit County. According to the indictment, defendant had been a leader in a criminal enterprise involving racketeering and the sale of controlled substances in Summit County.

Defendant retained private counsel (not the attorney representing him on appeal) to represent him at trial. In October 1993, defense counsel was charged with two counts of tampering with a witness and one count of bribery in a matter unrelated to defendant's case. Defense counsel told defendant of the charges pending against him.

On January 12, 1994, at defendant's request, defense counsel withdrew from representation. He then reentered his appearance as counsel on January 14, 1994. Attached to his notice of reentry was a letter which read: "Dear [attorney]; This letter is to have you represent me on Feb. 1st in Breckenridge. Sincerely, Bob Edebohls."

On February 1, 1994, the morning of trial, the trial court, having learned of the pending charges against defense counsel from a newspaper article, questioned him about the situation. The trial court verified that counsel had been charged, the nature of the charges, and the fact that they were pending in the same district. Thereafter, the trial court held an on the record discussion with defendant in chambers to determine if he wished to proceed with defense counsel or to have new counsel appointed. Neither defense counsel nor the prosecutor was allowed to attend. After this inquiry, the trial court determined that defendant had expressed his desire to proceed with defense counsel's representation.

Trial resulted in the conviction here at issue.

I.

Defendant contends that, because the indictment did not sufficiently allege a violation of the Act, the trial court lacked jurisdiction. Accordingly, he argues that his conviction cannot stand and that he cannot be retried. We disagree.

Grand jury indictments serve two purposes: to "give the defendant sufficient notice of the crime that has allegedly been committed so that a defense may be prepared" and to "define the acts which constitute the crime with sufficient definiteness so that the defendant may plead the resolution of the indictment as a bar to subsequent proceedings." *People v. Buckallew,* 848 P.2d 904, 909 (Colo.1993).

"Where a statute defines an offense in general terms, the indictment must allege the acts and conduct of the defendant which are deemed to have violated the statute." *People v. Buckallew, supra,* at 909. Merely reciting the statutory words is insufficient. *People v. Tucker,* 631 P.2d 162 (Colo.1981).

An indictment is not fatally insufficient if it adequately advises the defendant of the charges so he or she may defend against them. The sufficiency of the indictment is measured by substance, not form. *People v. Bergen,* 883 P.2d 532 (Colo.App.1994).

The Act was meant to eradicate organized crime in Colorado. Section 18–17–102, C.R.S. (1986 Repl.Vol. 8B). Section 18–17–104(3), C.R.S. (1986 Repl.Vol. 8B), states in pertinent part:

It is unlawful for any person employed by, or associated with, any enterprise to knowingly conduct or participate, directly or indirectly, in such enterprise through a pattern of racketeering activity or the collection of an unlawful debt.

Here, Count one of the 20–count Superseding Indictment stated in part:

On and between January 1, 1983 and December 18, 1992, in the counties of Summit, Lake, Clear Creek, and other counties ... Donald TUNICK conspired with ... Celia ROSS ... James TYLER ... Albert Neil PERRY, Richard FRYERS, Robert

EDEBOHLS and others known and unknown ... who are persons associated with or employed by an enterprise, and did unlawfully, feloniously and knowingly acquire and maintain, directly or indirectly, interest in and control of such an enterprise and real property, and endeavored, to conduct and participate in, as well as receive proceeds derived from, a pattern of racketeering activity, by committing a violation of offenses relating to controlled substances (part 3 of article 22 of title 12, C.R.S. and article 18 of title 18, C.R.S.), and, further, used and invested proceeds from such racketeering activity in the acquisition of title to, right, interest, and equity in real property and in the establishment and operation of an enterprise contrary to 18–7–104(1)(a), (2), (3), (4) C.R.S. (1986 Repl.Vol.), against the peace and dignity of the People of the State of Colorado and further that the defendants manifested their conduct of and participation in the pattern of racketeering and conspiracy as follows:....

In addition to this language, Count 1 contained 36 paragraphs enumerating the facts of the alleged offenses in more detail. Although defendant was indicted for violating § 18–7–104(1)(a), 18–7–104(2), 18–7–104(3), and 18–7–104(4), C.R.S. (1986 Repl.Vol. 8B), the jury was instructed only as to § 18–7–104(3).

According to the indictment, defendant, along with Koch and others, was involved in Tunick's drug distribution enterprise. The indictment also alleges that defendant made arrangements with Koch to receive a portion of cocaine from a deal involving Koch and Tunick, at a discounted price, in order to pay off a debt that Koch owed defendant for personal and drug debts.

However, the indictment also states defendant did not receive the cocaine as planned, and Tunick stopped supplying him with cocaine. Consequently, in order to continue in his drug business, defendant was required to purchase cocaine from Hook and Fryers who were still purchasing cocaine from Tunick.

Consequently, because the indictment gives defendant notice of the crime he allegedly committed, and defines the acts which formed the basis for the crime with sufficient particularity, the indictment is legally sufficient to confer jurisdiction. *See People v. Bergen, supra; see generally* S. Briggs, "Amending Indictments in Colorado: Colo. R.Crim. P. 6.8," 6 Colo. Lawyer 765 (May 1977).

## II.

■ Defendant next contends that the evidence was insufficient to support his conviction for violating the Act. We disagree and, thus, conclude that retrial of defendant is not barred.

When the sufficiency of the evidence is challenged on appeal, our task is to determine whether the evidence, when viewed as a whole, and in the light most favorable to the prosecution, is substantial and sufficient to support a conclusion by a reasonable person that the defendant is guilty beyond a reasonable doubt of the crimes charged. *Kogan v. People,* 756 P.2d 945 (Colo.1988); *People v. Stafford,* 890 P.2d 244 (Colo.App.1994).

Here, a leader in the drug enterprise testified in detail about several occasions when he had engaged in cocaine transactions with defendant. Evidence was presented that these transactions occurred in the context of the overall cocaine distribution "enterprise." Moreover, the amounts of cocaine allegedly bought and sold in these transactions tended to indicate that they were being purchased for the purpose of resale. This evidence, when viewed in the light most favorable to the prosecution, is substantial and sufficient to support defendant's conviction.

## III.

Defendant contends that the trial court erred by interviewing him, in chambers, without the benefit of counsel, to determine whether he wished to retain his attorney or have a new attorney appointed to represent him. Defendant further contends that the interview resulted in an invalid waiver of conflict-free counsel, thus requiring the reversal of his conviction. Under the unique circumstances here, we agree.

The Sixth Amendment and Colo. Const. art. II, § 16, guarantee a defendant the right to effective assistance of counsel. *People v. Castro*, 657 P.2d 932 (Colo.1983). A defendant's right to effective assistance of counsel includes the right to conflict-free representation. *Holloway v. Arkansas*, 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978); *People v. Martinez*, 869 P.2d 519 (Colo.1994).

### A.

■ Defendant first argues that, because criminal charges were pending against defense counsel, an actual conflict of interest existed. We agree.

■ In general, a conflict of interest exists when: (1) an attorney's representation of one client is directly adverse to another client, (2) when the attorney's ability to represent a client is materially limited by the attorney's responsibility to another client or to a third person, or by the attorney's own interests. *See* Rules of Professional Conduct 1.7(a) and (b).

■ A conflict of interest exists when defense counsel has been charged with a crime and is susceptible to prosecution, during the pendency of the representation of his or her client, by those responsible for the client's prosecution. *See United States v. DeFalco*, 644 F.2d 132 (3d Cir.1979)(finding conflict of interest as a matter of law when appellate defense counsel was indicted during pendency of appeal in the same district in which his client was being prosecuted); *United States v. McLain*, 823 F.2d 1457 (11th Cir.1987)(finding actual conflict when defense counsel was under investigation before and during defendant's trial and defense counsel had personal interest in extending duration of defendant's trial); *see also Vance v. Lehman*, 64 F.3d 119 (3d. Cir.1995)(fn.2); *Sanchez v. Arkansas*, 296 Ark. 295, 756 S.W.2d 452 (1988).

Once a potential conflict of interest becomes reasonably apparent, defense counsel has a duty to advise the defendant of the nature of the conflict and, in plain terms, to describe the specific ways in which the conflict may affect his or her ability to represent the defendant effectively at various stages of the case. Defense counsel should then place on the record the potential conflict of interest and should further advise the court that as complete a disclosure as possible has been made to the defendant. *People v. Castro, supra* (fn.10); *see also Rodriguez v. District Court*, 719 P.2d 699 (Colo.1986).

Unless the trial court knows or reasonably should know of a particular conflict, the court need not inquire into the propriety of continued representation. *Cuyler v. Sullivan*, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). But, once the trial court is on notice of a conflict, it has a duty to make such an inquiry. *Holloway v. Arkansas, supra*.

■ After a defendant has consulted with either defense counsel or independent conflict advisement counsel, the trial court should then seek from the defendant a narrative response, on the record, indicating his or her understanding of the right to conflict-free representation and a description of the conflict at issue. Throughout this inquiry, the trial court should actively seek to clarify any confusion the defendant may have about the advisement. *See United States v. Garcia*, 517 F.2d 272 (5th Cir.1975).

Because the same district attorney's office was responsible for the prosecutions of both defendant and defense counsel, defense counsel may well have been "subject to the encumbrance that the prosecutor might take umbrage at a vigorous defense" of defendant and become more ardent in the prosecution of defense counsel. *See People v. Castro, supra*, 657 P.2d at 945. Under these circumstances, we conclude that an actual conflict of interest existed. *See People v. Castro, supra; see also United States v. DeFalco, supra*.

The procedure to be followed when, as here, a trial court is given notice that defense counsel in a criminal case has a conflict of interest is as follows. The court should first inquire whether defense counsel has advised the defendant about the right to conflict-free representation and has explained the nature of the particular conflict at issue, including the risks associated with continued representation. If defense counsel indicates this has not occurred, counsel should be required to

do so. *See People v. Castro, supra* (fn.10). To protect the client-attorney relationship, such consultations need not be presented on the record or in open court.

■ In the trial court's discretion, it may appoint temporary advisement counsel to counsel the defendant concerning the right to effective assistance of counsel and the risks associated with proceeding in spite of defense counsel's conflict of interest. *See generally United States v. Garcia, supra; see Tyson v. District Court,* 891 P.2d 984 (Colo.1995); *People v. Martinez, supra; see also Commonwealth v. Jones,* 403 Mass. 279, 526 N.E.2d 1288 (1988); *State v. Kezer,* 918 S.W.2d 874 (Mo.App.1996).

### B.

■ Defendant next argues that he was inadequately advised of the nature of the conflict and of the risks associated with waiving conflict-free representation and, therefore, there was no valid waiver of that right. Again, in these unique circumstances, we agree.

Because a defendant has a right to retain counsel of his or her own choice, *Anaya v. People,* 764 P.2d 779 (Colo.1988), a defendant may choose to waive conflict-free representation. *Tyson v. District Court, supra.*

A waiver of the right to conflict-free counsel must be made voluntarily, knowingly, and intelligently. "The record must affirmatively show that the trial court fully explained the nature of the conflict and the difficulties defense counsel faced in his effective advocacy for the defendant." *People v. Martinez, supra,* 869 P.2d at 525.

The prosecution bears the burden of showing that the defendant was aware of the conflict and of its likely effect on defense counsel's ability to offer effective representation, and that the defendant thereafter voluntarily, knowingly, and intelligently waived his or her right to conflict-free representation. *People v. Martinez, supra.*

> If the defendant reveals that he is aware of and understands the various risks and pitfalls, and that he has the rational capacity to make a decision on the basis of this information, and if he states clearly and unequivocally ... that he nevertheless chooses to hazard those dangers, we would regard his waiver as knowing and intelligent and allow his choice to be "honored out of 'that respect for the individual which is the life blood of the law.' "

*United States v. Curcio,* 680 F.2d 881, 888–89 (2d Cir.1982).

Other general factors that courts have considered in determining whether a waiver is knowing and intelligent include: "whether the exchange between the defendant and the judge consisted of pro forma answers to pro forma questions, and whether the defendant was attempting to delay or manipulate the proceedings." *People v. Arguello,* 772 P.2d 87, 95 (Colo.1989).

Here, after verifying that defense counsel had been charged by the same prosecutor's office that charged defendant, the trial court determined:

> [T]here must be an advisement of the Defendant as to his knowledge and understanding of that and determination of whether he wishes to proceed with counsel in this matter, and waive any objection that might result from that Information ... I intend to do that out of the presence of everyone other than the Court and the reporter.

>     . . . .

> I've determined that it is appropriate to advise him without [defense counsel] present because your presence might inhibit his totally open response as to his feeling, and I don't think that it's a matter of intimidation. I think its a matter of he might be reluctant to say whatever he would say and we're making a record on it. . . .

The court then conducted an interview, in chambers and on the record, but outside of the presence of counsel. At no time before or during the interview was defendant permitted to consult with his retained counsel or with an advisory attorney regarding the benefits and risks of proceeding with retained counsel in light of the conflict.

During the interview, the trial court inquired whether defense counsel had advised defendant of the charges pending against defense counsel. Defendant responded that he and defense counsel had discussed the charges. Defendant then related that he had previously terminated the representation because he "didn't feel that [defense counsel] was going to be prepared to handle this ... because he was upset about this and I don't know if he was able to ... adequately prepare himself for it. I felt it threw a light on him that I felt I didn't need for my case. I felt it messed up my chances, you know, for any fairness or anything."

After further inquiry from the court, defendant added that defense counsel had failed to keep him informed of how his case was proceeding. The trial court then asked if defense counsel had discussed any possible plea bargains with him. Defendant responded that plea negotiations had been going on but that the district attorney's office "didn't live up to their end of the bargain."

On several occasions throughout the inquiry, the trial court advised defendant that he had a right to counsel of his choice.

The trial court then proceeded to question defendant about whether he wished to proceed with defense counsel representing him. Defendant responded equivocally, stating that he "didn't know what to do" and that he could not make up his mind. Defendant expressed concern that if he chose to have new counsel appointed, the new attorney would not have enough time to prepare adequately for trial. The trial court responded by informing defendant that his trial date could be vacated and reset "within a two to three month period...."

Twice defendant expressed frustration with the inquiry, first saying, "I don't know. I don't give a damn anymore. I'm ready to die next week if that's what they want me to do." Later, he exclaimed:

Well, my folks will complain about the money spent wasted on the attorney and all this. I'm just sick of getting bitched at from everybody and being the cause of everybody's troubles in the world. Let's just get it over with. You can shoot me after it's done if you want.

At the end of the inquiry, the trial court again asked defendant whether he wished to proceed with his current attorney, to which defendant responded "Let's."

Throughout the inquiry, which spanned over 14 pages of the transcript, the trial court did not specifically ascertain whether defense counsel and defendant had discussed the conflict of interest. Moreover, at no point did the trial court explain the conflict or advise defendant of his right to conflict-free representation. Thus, defendant was never given a "clear choice" between exercising or waiving his right to conflict-free counsel. Cf. People v. Arguello, supra.

Because of these deficiencies in the conflict advisement, we cannot conclude that defendant's waiver of conflict-free representation was knowing and intelligent.

Moreover, defendant's equivocal and sometimes irrational responses to the trial court's questions further support the conclusion that he did not knowingly and intelligently waive his rights. Indeed, defendant's display of apparent anxiety, self-pity, and indecision illustrates the need for "the guiding hand of counsel" and for appropriate advisement from the trial court to safeguard his right to a fair trial. See People v. Castro; see also Tyson v. District Court, supra (fn.1)(no waiver occurs when a defendant does not knowingly and intelligently waive right to counsel); see also W. Beaney, The Right to Counsel in American Courts 109 (1955)("Whether or not a waiver was made and made competently will be determined from the totality of facts in each situation.")

Thus, we hold that, based on the totality of the circumstances here, there was no valid waiver by defendant of his right to conflict-free representation.

## C.

██ Next, defendant argues that, because defense counsel labored under an actual conflict of interest and because defendant did not knowingly and intelligently waive his right to conflict-free representation, his conviction must be reversed. Again, we agree.

The violation of a defendant's right to conflict-free representation cannot be viewed as harmless error. When an actual conflict of interest is shown, we need not attempt to calculate the amount of prejudice attributable to the conflict. If a defendant demonstrates that his or her attorney labored under an actual conflict of interest during the trial, a showing of actual prejudice is not a condition for relief. Indeed, such a showing is frequently impossible. *Anaya v. People, supra; see also Cuyler v. Sullivan, supra; Holloway v. Arkansas, supra; Armstrong v. People,* 701 P.2d 17 (Colo.1985).

As was noted in *United States v. DeFalco, supra,* 644 F.2d at 137:

> We are persuaded that . . . legitimate decisions of counsel were rendered suspect because of the potential for conflicting loyalties to himself and to his client and because . . . a reviewing court cannot reliably determine to what extent the decisions were based on legitimate tactical considerations and to what extent they were the result of impermissible considerations. We therefore hold as a matter of law that the standard of normal professional competence cannot have been achieved by appellant's counsel.

Thus, reversal of defendant's conviction is required. *See Armstrong v. People, supra; see also United States v. DeFalco, supra.*

In light of this disposition, defendant's remaining contentions of error are either moot or unlikely to arise on retrial. Therefore, we will not address them.

The judgment is reversed and the cause is remanded for further proceedings consistent with the views stated in this opinion.

HUME and ROY, JJ., concur.