The **PEOPLE** of the State of Colorado, Plaintiff–Appellee,

v.

**Kim L. WADDELL, Defendant–Appellant.**

No. 98CA0890.

Colorado Court of Appeals, Div. V.

April 27, 2000.

Rehearing Denied July 6, 2000.

Certiorari Denied Jan. 16, 2001.

Ken Salazar, Attorney General, Kathleen M. Byrne, Special Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David F. Vela, Colorado State Public Defender, Elizabeth Griffin, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge KAPELKE.

Defendant, Kim L. Waddell, appeals from the judgment of conviction entered on a jury verdict finding him guilty of two counts of second degree burglary, two counts of attempted third degree sexual assault, and two counts of criminal mischief. We reverse the second degree burglary convictions and affirm the other convictions.

The criminal charges against defendant grew out of his having drilled holes and inserted peeping devices in the bathroom floors of two homes in which he had performed maintenance work.

As to the first residence, a water line had broken, flooding the crawlspace. The residents had retained defendant's employer to undertake the necessary repair work, which entailed replacement of two furnaces located under the home.

Defendant received permission from the residents to enter the crawlspace beneath the house in connection with his work, and he was observed going in and out of the crawlspace.

While he was at the house, defendant drilled a hole in the bathroom floor and inserted a peeping device. The wife took a shower during the time defendant was in the crawlspace.

Later that evening, the son discovered the peephole in the bathroom and notified his parents, who then called the police.

The following day, a police officer investigating the case questioned defendant who initially denied having drilled the peephole and having inserted the viewing device. During a second interrogation, however, defendant admitted that he had done so and also told the officer that he had done it once before at another home.

When the police went to the other home, they discovered a hole drilled in the bathroom floor under the sink. The couple living at the other home told the police that defendant had received their permission to work on plumbing, heat vents, and insulation in their crawlspace. The bathroom was located above the crawlspace, which was approximately 30 feet from the work area.

Defendant was initially charged with second degree burglary, attempted third degree sexual assault, criminal mischief, and tampering in relation to the peephole at the first residence.

Thereafter, the prosecution filed an amended complaint, adding three charges of second degree burglary, third degree sexual assault, and criminal mischief relating to the peephole at the second residence.

Prior to trial, defendant moved to suppress his statements to the investigating officer during the second interrogation as having been involuntary. The court denied the motion.

At trial, at the conclusion of the prosecution's case-in-chief, defendant moved for a judgment of acquittal, arguing, as pertinent here, that the prosecution had failed to prove beyond a reasonable doubt an essential element of the charge of burglary: namely, that he had "entered unlawfully" or "remained unlawfully" within the meaning of § 18–4–203, C.R.S.1999. The trial court denied the motion, concluding that there was sufficient evidence from which the jury could conclude that defendant had "unlawfully entered" pursuant to the statute.

## I.

Defendant first contends that the evidence was insufficient to sustain his conviction for second degree burglary. Specifically, he argues that because he had permission to enter the crawlspaces of the two homes, the prosecution failed to prove that he unlawfully entered, or unlawfully remained, within the meaning of the statute. We agree.

When presented with a challenge based on the sufficiency of the evidence, we must determine whether that evidence, viewed as a whole and in the light most favorable to the prosecution, is sufficient to support a conclusion by a reasonable person that the defendant is guilty of the crimes charged beyond a reasonable doubt. *People v. Schoondermark,* 699 P.2d 411 (Colo.1985).

Section 18–4–203(1), C.R.S.1999, provides, in pertinent part, that:

A person commits criminal second degree burglary, if the person knowingly breaks an entrance into, *enters unlawfully in, or remains unlawfully after a lawful or unlawful entry* in a building or occupied structure with intent to commit therein a crime against another person or property.

(emphasis added)

A person "enters unlawfully" or "remains unlawfully" in or upon premises when he is not licensed, invited, or otherwise privileged to do so. Section 18–4–201(3), C.R.S.1999; *People v. Barefield,* 804 P.2d 1342, 1344 (Colo.App.1990); *See Cooper v. People,* 973 P.2d 1234 (Colo.1999) (to convict a defendant under § 18–4–203, a jury must find that the defendant either: (1) broke and entered or unlawfully entered with the intent to commit a crime therein; or (2) entered lawfully but subsequently remained unlawfully with the intent to commit a crime therein).

A previously granted authority to enter must be withdrawn before a person so authorized can be convicted. *See People v. Barefield, supra.*

Here, the residents of both homes testified that defendant had permission to enter the crawlspace of their homes. Further, that permission was not withdrawn while defendant was at the homes.

Nevertheless, the People urge that although defendant had permission to enter the crawlspace and was not prohibited from using the bathrooms, he was not authorized to use the bathrooms for the purpose of installing a peephole and also was not authorized to enter areas of the crawlspace to which access was not needed for the repair work. Accordingly, the People argue, an unlawful entry was proven. We reject this contention.

The cases relied upon by the People involve situations where the defendant had entered rooms or portions of a building where entry was not permitted. Therefore, those cases are distinguishable. See, e.g., People v. Lopez, 946 P.2d 478 (Colo.App.1997) (although he lived in the family home, defendant committed second degree burglary when he entered his parents' bedroom, which he was prohibited from entering, and stole money from a hidden stash); People v. Barefield, supra (janitor in public office building committed burglary when he entered a locked office which had a "do not enter" sign, with intent to steal); see also People v. Nichols, 920 P.2d 901 (Colo.App.1996) (inmate committed burglary when he entered cell of another inmate without permission and with intent to steal).

Here, the record indicates that the crawlspace in the first house was compartmentalized. However, the owner specifically permitted defendant to enter that portion of the crawlspace that was under the bathroom. As to the second house, there is no indication in the record that the crawlspace was compartmentalized. In neither instance was permission to enter limited to any discrete portion of the respective crawlspace. Also, we note that the People do not contend that it was the drilling of the hole through the floor that constituted an unlawful entry.

Further, the fact that the defendant entered the crawlspaces or bathrooms with an intent to commit a sexual offense does not, in and of itself, satisfy the "unlawful entry" or "unlawful remaining" element. The defendant's intent is a wholly separate element. In rejecting a similar argument, the supreme court in People v. Carstensen, 161 Colo. 249, 251, 420 P.2d 820, 821 (1966), stated as follows:

To so hold would mean the adoption of a rule that one who enters a building, even with the permission of the owner, but with intent to commit a theft therein, would [a] fortiori be guilty of burglary. Intent at the time of entry in Colorado is not the sole element of burglary under our statute.

See also Stowell v. People, 104 Colo. 255, 90 P.2d 520 (1939).

Thus, because defendant's entry of the respective crawlspaces and bathrooms was not shown to have been unlawful, we conclude that the record, even when viewed as a whole and in the light most favorable to the prosecution, is insufficient to support defendant's convictions of second degree burglary under § 18–4–203.

## II.

Defendant next contends that the trial court committed reversible error by not properly advising him of his counsel's conflict of interest. Thus, defendant argues, he did not waive his right to conflict-free counsel. We disagree.

Defense counsel entered his appearance on behalf of defendant on May 15, 1997. At the time, defense counsel was being prosecuted on a felony case by the same district attorney who was prosecuting defendant's case. The same judge was presiding over both cases. Defense counsel had been charged with introduction of contraband into county jail, a class six felony, for having allegedly brought cigarettes to a client after being told by jail officials that he was not permitted to do so. See People v. Holmes, 959 P.2d 406 (Colo. 1998). On February 10, 1997, defense counsel had filed a motion to dismiss the charges against him.

At a hearing on April 25, 1997, defense counsel was found in direct contempt of the court for making a disparaging remark to the prosecutor in connection with the court's suggestion of a date for completion of the pending hearing. Defense counsel was sentenced to two days in jail and fined. On May 9, 1997, shortly before making his appearance on behalf of defendant, defense counsel filed

a notice of appeal in connection with the contempt finding.

On May 31, 1997, the trial court granted the defense counsel's motion to dismiss the felony charges against him, based on a finding that the statute was unconstitutional. On June 2, 1997, the district attorney filed a notice of appeal. On May 26, 1998, by a four to three decision, the supreme court affirmed the trial court's dismissal of the charges against defense counsel. *People v. Holmes, supra.*

■ A defendant's right to effective assistance of counsel includes the right to conflict-free representation. "A conflict of interest exists when defense counsel has been charged with a crime and is susceptible to prosecution, during the pendency of the representation of his or her client, by those responsible for the client's prosecution." *People v. Edebohls,* 944 P.2d 552, 556 (Colo. App.1996).

■ Here, as noted, the same district attorney handled the prosecution of both defendant and defense counsel. As such, it was possible for the defense counsel to have been "subject to the encumbrances that the prosecutor might take umbrage at a vigorous defense" of defendant and become more zealous in the prosecution of defense counsel. *People v. Edebohls, supra,* 944 P.2d at 556 (quoting from *People v. Castro,* 657 P.2d 932, 945 (Colo.1983)). Under these circumstances, we conclude that an actual conflict of interest existed.

In so doing, we reject the People's argument that the mere fact that the supreme court might have ultimately reversed the trial court's dismissal of the charges against defense counsel was too slender a basis to find a conflict of interest at the time of trial. As defendant points out, the charges against defense counsel could have been reinstated had the supreme court reversed the trial court's ruling. In view of that possibility and the pendency of the appeal, the conflict remained a real one that could have affected defense counsel's representation of defendant.

Having concluded that an actual conflict existed, we must next address defendant's contention that he did not voluntarily waive his right to conflict-free counsel. We conclude that defendant's waiver was valid.

■ A defendant may waive the right to conflict-free representation provided that such a waiver is made voluntarily, knowingly, and intelligently. Further, the record must reflect that the trial court explained the nature of the conflict and the difficulties defense counsel faced in effectively advocating for defendant. *See People v. Edebohls, supra.*

■ Here, the trial court discussed the conflict with defendant and with both counsel as follows:

THE COURT: And I don't know, you perhaps already made a record on it in county court, [defense counsel], *but have you advised [defendant] of your situation and how that might affect his case?*

[DEFENSE COUNSEL]: *Yes.*

THE COURT: I know your case isn't final yet.

[DEFENSE COUNSEL]: *[Defendant] has been advised that there was a felony proceeding,* and I don't know if he knows there's been an order and the matter may be stayed and up on appeal, but—do you know what we're talking about, [defendant]?

THE DEFENDANT: No.

[DEFENSE COUNSEL]: The criminal charges against me—

THE DEFENDANT: Oh.

[DEFENSE COUNSEL]:—involving the cigarettes.

THE DEFENDANT: *Yes, correct.*

THE COURT: [Defense counsel], *I take it you have discussed this with [defendant].*

[DEFENSE COUNSEL]: *Yes, sir.*

THE COURT: *And he has waived any possible conflict that you may have in representing him.*

[DEFENSE COUNSEL]: *That's correct. Would you like [defendant] to tell you?*

THE DEFENDANT: *That's fine.*

THE COURT: Do you want any further record on it, [prosecutor]?

[THE PROSECUTION]: I just didn't hear [defendant's] response, but I think it's fine the way *it's been explained if he agrees that he's waived any conflict.*

[DEFENDANT]: *Yeah.* (emphasis added)

■ Once defense counsel learns of a potential conflict of interest, he or she must advise the defendant of the nature of the conflict and describe in plain language the specific ways in which the conflict may bear on counsel's ability to represent the defendant effectively at various stages of the case. Defense counsel should then place the potential conflict on the record and further advise the court that defendant has received as complete a disclosure as possible. *People v. Edebohls, supra.*

Here, defense counsel did place the potential conflict of interest on the record. He also indicated to the court that he had discussed the matter with defendant. Further, defendant acknowledged that he had been so advised.

In the colloquy quoted above, the court specifically ascertained whether defense counsel had advised defendant concerning the nature of the conflict of interest and had explained to him how it might affect his case. Defendant responded that he and defense counsel had discussed the charges. When the court also inquired whether defendant had waived his right to conflict-free representation, defense counsel indicated that defendant had indeed waived that right. When defense counsel asked the court if it preferred that defendant himself tell the court of the waiver, defendant interrupted and stated "that's fine." Finally, when the prosecutor asked for a clarification as to whether defendant understood that he had waived any conflict, defendant acknowledged that he had.

Under these circumstances, and despite the abbreviated nature of the discussion of the conflict and its potential effect on defense counsel's representation, we conclude that defendant's waiver of conflict-free representation was knowing and intelligent.

## III.

Finally, defendant contends that the court committed reversible error by refusing to suppress statements defendant made to the investigating officer. In the alternative, defendant argues that his convictions for second degree burglary must be dismissed because he waived his right to counsel and to remain silent in direct reliance on a promise made by the government. We reject the contention.

■ In his motion to suppress, defendant asserted that his statements to the investigating officer must be suppressed because they were improperly induced. Specifically, defendant contended that his statements were induced by a police officer's "promise" that if any criminal charges were to be brought against him, they would be for a misdemeanor punishable by no more than a jail term of one year and fines.

After hearing all the evidence, including the officer's testimony, the court denied defendant's motion to suppress. In so doing, the trial court found that defendant was told during the interrogation that he was a suspect and that he might be arrested after making his statement, but that he would not be booked into jail that day. The court also found that in response to defendant's inquiry as to what charges he faced or what charges the officer planned to bring, the officer told him that the crimes he was investigating were third degree sexual assault and a misdemeanor criminal mischief and also told him that, if he confessed, those would be the charges the officer would bring against him.

The trial court concluded that the officer (1) "never promised the defendant absolutely that third degree sexual assault and a misdemeanor criminal mischief would be the only charges with which [he would] be charged" and (2) "did not make any promises at all about what the District Attorney might do." As the trial court noted, the officer himself charged defendant with only the misdemeanor offenses.

Also, in his testimony, the officer stated that it was his practice, prior to "every single" interrogation, to inform the suspect that he could not make any promises and that the district attorney's office and the courts ultimately decided the nature of the charges to be brought against a suspect.

Accordingly, because there is record support for the trial court's finding that the officer did not promise defendant that he could not be charged with any offense other than misdemeanors, we perceive no basis for reversal of the charges against defendant other than the second degree burglary counts.

The judgment of conviction is reversed as to the counts of second degree burglary and affirmed as to the attempted third degree sexual assault and criminal mischief counts.

Judge ROTHENBERG and Judge CASEBOLT concur.