**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Frank R. MATA, Defendant–Appellant.**

**No. 00CA0923.**

Colorado Court of Appeals, Div. V.

March 28, 2002.

As Modified on Denial of Rehearing May 16, 2002.

Certiorari Denied Oct. 21, 2002.

Ken Salazar, Attorney General, John J. Fuerst, III, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Martin Gerra, Deputy State Public

Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAVIDSON.

Defendant, Frank R. Mata, appeals from a judgment of conviction entered on a jury verdict finding him guilty of one count of sexual assault on a child and two counts of sexual assault on a child with crime of violence. Defendant also appeals certain aspects of his sentence. We affirm the judgment and sentence and remand to the trial court for a hearing on the amount of restitution and for correction of the mittimus.

The victim was the younger sister of defendant's girlfriend and was ten years old at the time of the offenses. The victim testified at trial to three instances of abuse, two of which involved penetration.

The first trial ended in a mistrial because of an outburst by defendant. The second trial also ended in a mistrial because the jury could not reach a unanimous verdict. The third trial resulted in the convictions at issue here.

## I.

This case was prosecuted by a special prosecutor from El Paso County. Defendant argues that, because his attorney had been issued a traffic citation in that judicial district, his attorney provided ineffective assistance because he had a conflict of interest. We disagree.

In general, a conflict of interest exists, inter alia, when an attorney's ability to represent a client is materially limited by the attorney's own interests. *See* Colo. RPC 1.7(b). Such a conflict can exist when defense counsel has been charged with a crime and is susceptible to prosecution, while representing the client, by those responsible for the client's prosecution. *See People v. Waddell,* 24 P.3d 3 (Colo.App.2000). In that instance, the conflict arises because counsel would be " 'subject to the encumbrance that the prosecutor might take umbrage at a vigorous defense' of defendant and become more ardent in the prosecution of defense counsel." *People v. Edebohls,* 944 P.2d 552, 556 (Colo.App.1996)(quoting *People v. Castro,*

657 P.2d 932, 945 (Colo.1983)). *See Thompkins v. Cohen,* 965 F.2d 330 (7th Cir. 1992)(fear of retaliation for zealous advocacy must be shown before conflict is found).

Furthermore, when, as here, the issue was not addressed by the trial court, a defendant must show that an actual, rather than potential, conflict of interest existed and that the actual conflict adversely affected his lawyer's performance. A showing of prejudice is not required, but the conduct of the trial must have been affected. *See Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *see also People v. Castro, supra.*

In *People v. Edebohls, supra,* a division of this court found an actual conflict of interest when defense counsel faced charges of tampering with a witness and bribery, and the same district attorney's office was responsible for the prosecution of both the defendant and defense counsel. Similarly, in *People v. Waddell, supra,* another division of this court determined that an actual conflict of interest existed when defense counsel was being prosecuted on a felony charge for introduction of contraband into the county jail by the same district attorney who was prosecuting the defendant, and the same judge presided over both cases.

Here, however, defense counsel had been charged merely with a traffic infraction for failure to obey a traffic signal and a misdemeanor traffic offense for failure to present proof of insurance. In our view, these charges are not sufficiently similar to those in *Edebohls* and *Waddell* to establish an actual conflict. *See also United States v. McLain,* 823 F.2d 1457 (11th Cir.1987)(attorney charged with perjury and bribery under Hobbs Act); *United States v. DeFalco,* 644 F.2d 132 (3d Cir.1979)(attorney convicted of mail fraud, which led to disbarment).

First, the failure to obey a traffic signal is a civil traffic infraction, not a criminal offense. *See* § 42–4–1701(1), C.R.S.2001.

Second, misdemeanor traffic offenses, such as the one charged here, are classified separately from other misdemeanors and felonies, *compare* § 42–4–1701, C.R.S.2001 (traffic offenses), *with* § 18–1–104(1), (2), C.R.S.2001

(felonies, misdemeanors, and petty offenses), and are significantly less serious than the felonies at issue in *Edebohls* and *Waddell.* Indeed, although an attorney must report criminal convictions to the regulation counsel, a misdemeanor traffic offense or traffic ordinance violation need not be reported, unless it involves the use of alcohol or drugs. *See* C.R.C.P. 251.20(b).

Finally, a charge of failure to produce proof of insurance is subject to dismissal upon presentation of documentation showing that proper insurance was in effect at the time of the alleged violation, *see* § 42–4–1409(3), (6), C.R.S.2001, and the record here, we note, indicates that this charge against defense counsel was dismissed.

Under these circumstances, we conclude that no actual conflict of interest was created by the pendency of these charges. Prosecution for failure to obey a traffic signal and failure to present proof of insurance does not put counsel in fear of his or her own zealous advocacy or in a position "inherently conducive to and productive of divided loyalties." *See People v. Castro, supra,* 657 P.2d at 945; *cf. United States v. DeFalco, supra,* 644 F.2d at 136 (federal mail fraud charges create "inherent emotional and psychological barriers" to counsel's ability to compete "vigorously with the government").

Nor does defendant show any adverse effect on counsel's representation. Defendant does not point to any instance where counsel's actions might have been hindered by concern for his own traffic violation charges. *See Cuyler v. Sullivan, supra; United States v. Baker,* 256 F.3d 855 (9th Cir.2001)(bare allegation of conflict based on attorney's cooperation and plea on unrelated charges insufficient basis on which to predicate actual conflict); *United States v. Balzano,* 916 F.2d 1273 (7th Cir.1990)(no conflict where defendant did not show actual effect on trial); *Sanchez v. State,* 296 Ark. 295, 756 S.W.2d 452 (1988) (same); *cf. United States v. McLain, supra* (actual conflict where defense counsel had personal interest in extending duration of defendant's trial).

## II.

Defendant's adult daughter testified that, when she was nine or ten, defendant sexually abused her multiple times. This abuse included digital penetration and fondling, but not penile penetration. Defendant contends that the trial court erred in admitting this testimony as evidence as prior similar acts. We disagree.

A trial court's rulings regarding the admissibility of evidence of similar acts will be upheld absent an abuse of discretion. *People v. Rodriguez,* 914 P.2d 230 (Colo. 1996); *People v. Martinez,* 36 P.3d 154 (Colo. App.2001). In cases involving sexual assault on a child, evidence of prior similar acts by a defendant may be admissible pursuant to § 16–10–301, C.R.S.2001, and CRE 404(b).

As pertinent here, § 16–10–301(3), C.R.S. 2001, authorizes the introduction of evidence of prior sexual assaults to show intent and to refute the defense of recent fabrication. Section 16–10–301 reflects a policy judgment that there is a need in sexual assault cases to make similar transaction evidence more readily available. *People v. Duncan,* 33 P.3d 1180 (Colo.App.2001).

CRE 404(b) also provides for use of this evidence to prove intent. *People v. Spoto,* 795 P.2d 1314 (Colo.1990); *People v. Duncan, supra.* Under CRE 404(b), evidence is admitted when it relates to a material fact; the evidence has logical relevance in that it tends to make the existence of the material fact more probable or less probable than it would be without the evidence; the logical relevance of the evidence does not depend on an intermediate inference that the defendant has a bad character; and the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice. *People v. Spoto, supra.*

Here, defendant's theory was that the victim fabricated her stories. Because intent is the "other side of the coin" of a fabrication or consent defense, defendant's intent was a material fact as to each offense. *See People v. Martinez, supra,* 36 P.3d at 159 (allowing evidence of prior sexual assaults to counter defense of fabrication and consent).

We disagree with defendant that the charged offenses and the prior acts did not share enough significant features to render the evidence probative. Defendant's daughter and the victim were of a similar age at the time of the assaults, both victims were familiar to defendant and were molested in defendant's home, the progression of abuse was similar, and defendant threatened both children to maintain secrecy. *See People v. Martinez, supra.*

Moreover, contrary to defendant's contention, the evidence was relevant independent of any inference of defendant's propensity or bad character. *See People v. Duncan, supra; People v. Martinez, supra; see also People v. Spoto, supra* (under doctrine of chances, prior similar acts have logical relevance independent of showing of bad character). And, the record supports the trial court's determination that the probative value of this evidence in assisting the jury to analyze defendant's state of mind outweighed the danger of unfair prejudice. *See People v. Duncan, supra; People v. Delgado,* 890 P.2d 141 (Colo.App.1994)(issue addressed to trial court's discretion).

## III.

■ A doctor who examined the victim after the abuse testified at trial that the victim's hymen was disrupted and that she had vaginal discharge unusual for a prepubescent girl. Relying on these findings, the expert testified that, although she could not pinpoint a date, it was her opinion that the victim had been sexually abused.

During a pretrial investigation, the victim had disclosed that, prior to the assaults by defendant, her other sister's boyfriend had broken into the victim's house while intoxicated and had lain on top of her. At trial, defendant contended that evidence of this incident was admissible at trial under § 18–3–407(1)(b), C.R.S.2001, as an alternative explanation for the expert's medical findings. The trial court disagreed, finding it irrelevant because there was no evidence of penetration by the boyfriend. Defendant contends that this ruling was error. We disagree.

■ Section 18–3–407(1), C.R.S.2001, creates a presumption that evidence relating to a rape victim's sexual conduct is irrelevant to the proceedings. *People in Interest of K.N.,* 977 P.2d 868, 872 (Colo.1999). Prior sexual victimization is considered "sexual conduct" under the rape shield statute. *People v. Aldrich,* 849 P.2d 821 (Colo.App.1992).

The presumption does not apply to "[e]vidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse offered for the purpose of showing that the act or acts charged were or were not committed by the defendant." Section 18–3–407(1)(b).

However, when the relevancy of evidence depends upon the fulfillment of a condition of fact, the trial court "shall admit it upon, or subject to, the introduction of evidence sufficient to support a finding of the fulfillment of the condition." CRE 104(b). Under such circumstances, the court must find that the party tendering the evidence made a prima facie showing that the conditional fact occurred. *People v. Garner,* 806 P.2d 366 (Colo.1991).

Here, although it did not specifically reference CRE 104(b), the trial court correctly determined that the incident with the sister's boyfriend was relevant under § 18–3–407(1)(b) only if penetration had occurred then. *See People v. Harris,* 43 P.3d 221, (Colo.2002)(defendant failed to make preliminary showing of relevance sufficient to rebut rape shield statute's presumption of irrelevance).

Furthermore, the record supports the court's finding that penetration had not occurred. Specifically, at the in camera hearing on the issue, the victim stated only that the boyfriend "laid on me, and that's all that happened with me." She also testified that both of them had on their clothes and that she felt no pain other than "in my chest, because he was ... heavy." On cross-examination, the victim again denied that she had ever stated that the boyfriend had "put anything inside [her]." No other evidence was presented to support defendant's contention. Although defense counsel offered that a social worker, who was not present at the in

camera hearing, would testify that the victim told her penetration had occurred, the written report from the social worker did not include such an allegation. Moreover, the social worker ultimately did not testify, and defendant did not request a continuance to obtain her presence or otherwise object to the determination of the issue without her testimony.

## IV.

Defendant next contends that the sentences imposed improperly exceeded the minimum term authorized by the Colorado Sex Offender Lifetime Supervision Act of 1998 (the Act). We disagree.

Defendant was sentenced to fifteen years to life and ten years to life for the two counts of sexual assault on a child with crime of violence and five years to life for sexual assault on a child.

Under the Act, § 16–13–801, et seq., C.R.S.2001, a sex offender must be sentenced to "an indeterminate term of at least the minimum of the presumptive range ... and a maximum of the sex offender's natural life." Section 16–13–804(1)(a), C.R.S.2001. And, under § 16–13–804(1)(b), when an offender is convicted of a sex offense that constitutes a crime of violence, the trial court must sentence the offender to "an indeterminate term of at least the midpoint in the presumptive range for the level of offense committed and a maximum of the sex offender's natural life."

Initially defendant contends that the presumptive ranges to which § 16–13–804(1) applies were two to six years. We disagree. The trial court accurately calculated the presumptive ranges at two to eight years for the child sexual assault offense and five to sixteen years for each of the two child sexual assault offenses with crime of violence.

Specifically, the normal presumptive range for class four felony convictions is two to six years. Section 18–1–105(1)(a)(V), C.R.S. 2001. However, because sexual assault on a child also constitutes an extraordinary risk crime, the maximum presumptive term must be increased by two years, changing the maximum from six to eight years. Section 18–1–105(9.7)(a), C.R.S.2001. Therefore, for child sexual assault without crime of violence, the presumptive range is two to eight years.

For defendant's two sexual assault with crime of violence counts, the sentencing range is the midpoint of the presumptive range up to twice the maximum of the presumptive range. Section 16–11–309(1)(a), C.R.S.2001. Contrary to defendant's assertion, the presumptive range is first increased under § 18–1–105(9.7)(a) before it is doubled under § 16–11–309(1)(a). *People v. Greymountain*, 952 P.2d 829 (Colo.App.1997). The presumptive range for defendant's two sexual assault offenses with crime of violence is, therefore, five to sixteen years.

Applying § 16–13–804(1)(a),(b) to these presumptive ranges, the court properly sentenced defendant to fifteen years to life and ten years to life for the two counts of sexual assault on a child with crime of violence and five years to life for sexual assault on a child. Although we note that, for the child sexual assault with crime of violence counts, the midpoint of the presumptive range under § 16–13–804(1)(b) is ten years and six months, and the court sentenced defendant to a minimum of ten years on one count, the people have not raised any issue of illegality.

We also disagree with defendant's contention that under § 16–13–804(1)(b), the court cannot sentence a defendant to a minimum that is more than the midpoint in the presumptive range. We agree with the reasoning of the division of this court in *People v. Smith*, 29 P.3d 347 (Colo.App.2001), interpreting § 16–13–804(1)(a), and conclude that the General Assembly's use of the phrase "at least" in § 16–13–804(1)(b) allows the trial court to impose an increased minimum.

## V.

Defendant next contends that the trial court erred in ordering him to pay restitution and transcript costs. We agree in part.

During a sentencing hearing on April 3, 2000, the court ordered defendant to pay restitution and costs. The minute order reflects that the court entered an order for payment of fines, fees, and costs in a total amount of $2980.20. This amount included

1175

$1580.20 specifically for court transcripts. The court did not order a specific restitution amount at that time, but granted the prosecution thirty days to provide restitution figures. The court then signed an order, dated May 1, ordering defendant to make restitution to the victim of $896.19. The mittimus was amended on May 2, 2000, to add the restitution.

On April 17, the court granted defendant's motion to proceed on appeal in forma pauperis and receive free transcripts.

### A.

■ While not disputing the amount, defendant first argues that, because the court granted his request to proceed in forma pauperis on appeal, the imposition of costs for transcripts should be struck from the mittimus. We disagree.

Section 16–11–501, C.R.S.2001, requires the court to impose the costs of prosecution upon a convicted defendant. Those costs include "[a]ny fees of the court reporter for all or any part of a transcript necessarily obtained for use in the case, including the fees provided for in section 16–18–101(2) and including the fees for a transcript of any preliminary hearing." Section 16–11–501(2)(d), C.R.S.2001. Although it is unclear from the record which specific transcripts are included in the costs, it is clear that they were intended as a cost of prosecution, not appeal. The court's order allowing the defendant to proceed in forma pauperis on appeal and granting a free transcript for appeal is independent of the requirement to impose the costs of prosecution upon a convicted defendant.

### B.

■ However, we agree with defendant that he did not receive proper notice of or opportunity to contest the court's determination of the amount of restitution.

Colo. Sess. Laws 1998, ch. 172, § 16–11–102(4) at 519, in effect at the time of defendant's sentencing, required that "[t]he amount of restitution equal to the full pecuniary loss caused by the defendant shall be imposed by the court at the time of sentenc-ing and shall be endorsed upon the mittimus." This statute directed the court to determine the amount of restitution owed, if any, at the time of sentencing. *People v. Strock,* 931 P.2d 538 (Colo.App.1996). Under that statutory scheme, the defendant is to be given the opportunity, at the sentencing hearing, to controvert the victim's claimed monetary damages. *See People v. Johnson,* 780 P.2d 504 (Colo.1989).

Here, the court did not determine a restitution amount at the sentencing hearing, but a month later simply entered an order specifying the amount. Thus, defendant had no opportunity to controvert the victim's claimed monetary damages. *Cf. People v. Miller,* 830 P.2d 1092 (Colo.App.1991)(defendant waived right to contest restitution by failing to object when presented with late presentence report); *People v. Powell,* 748 P.2d 1355 (Colo.App.1987)(defendant waived objection to restitution amount by failing to provide contrary evidence when given opportunity to do so at restitution hearing).

### VI.

■ Defendant next contends that the mittimus must be corrected to delete separate sentences for the crime of violence counts. The prosecution agrees, and so do we.

■ The crime of violence statute, § 16–11–309, defines sentencing standards and does not create separate substantive offenses. The application of the statute is triggered only after a defendant has been found guilty of the substantive crime, and the special findings relate only to the sentencing for the substantive offense. *People v. Espinoza,* 669 P.2d 142 (Colo.App.1983), *aff'd,* 712 P.2d 476 (Colo.1985).

Here, as discussed, the crime of violence counts were properly applied to double the maximum in the presumptive range for two counts of sexual assault. However, the mittimus incorrectly imposes separate ten- and fifteen-year sentences for the crime of violence counts.

The judgment of conviction and the sentence are affirmed, except that the case is

remanded to the trial court for a hearing on the amount of restitution and for correction of the mittimus to delete the separate sentences for the crime of violence counts.

Judge CASEBOLT and Judge NIETO concur.