The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
September 1, 2022

## 2022COA97

**No. 19CA0287, *People v. Lopez* — Constitutional Law — Sixth Amendment — Right to Counsel — Right to Conflict-Free Representation**

As a matter of first impression, a division of the court of appeals determines whether a defendant must satisfy the *Sullivan* prophylaxis in order to obtain relief in a conflict-free counsel claim when the conflict arises from the simultaneous prosecution of defense counsel and defendant by the same jurisdiction during the representation. Our supreme court has thus far explicitly limited the *Sullivan* prophylaxis to conflicts arising from the representation of multiple defendants. The division concludes that due to the differing nature of the conflicts, the *Sullivan* prophylaxis should not be extended. The judgment is reversed and the case is remanded.

COLORADO COURT OF APPEALS                                    **2022COA97**

Court of Appeals No. 19CA0287
El Paso County District Court No. 17CR3917
Honorable David A. Gilbert, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Matthew Rodolfo Vansant Lopez,

Defendant-Appellant.

JUDGMENT REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division V
Opinion by JUSTICE MARTINEZ*
Fox and Casebolt*, JJ., concur

Announced September 1, 2022

Philip J. Weiser, Attorney General, Frank Lawson, Assistant Attorney General,
Denver, Colorado, for Plaintiff-Appellee

McClintock Law Firm, LLC, Elizabeth A. McClintock, Colorado Springs,
Colorado, for Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2021.

¶ 1     Matthew Rodolfo Vansant Lopez appeals his multiple convictions on two grounds.  First, he contends that the trial court violated his constitutional right to conflict-free counsel.  Second, he argues that the trial court erred by failing to disqualify a biased juror.  We agree with his first contention and therefore reverse his convictions and remand his case for a new trial.  Because his second claim is unlikely to arise on remand, we need not address it.

## I.     Background

¶ 2     Lopez and the victim, K.H., knew each other as acquaintances, and he invited her to his apartment.  When she arrived, he showed her his gun collection, then propositioned her for sex.  When she declined, Lopez told her, "[Y]ou know I'm going to rape you, right."  K.H. attempted to flee, but Lopez blocked her path, forced her onto his couch, and sexually assaulted her.  K.H. reported the assault to the police, and when they searched Lopez's home, they found a homemade incendiary or explosive device that looked like a tennis ball wrapped in duct tape.

¶ 3     Lopez was charged with seven felony counts: two counts of sexual assault in violation of section 18-3-402, C.R.S. 2021, along with two crime of violence sentence enhancers pursuant to section

18-1.3-406(2)(a)(I)(A), C.R.S. 2021; one count of second degree kidnapping in violation of section 18-3-302(1), (3), C.R.S. 2021; one count of possession of an explosive or incendiary device in violation of section 18-12-109(2), C.R.S. 2021; and one count of menacing in violation of section 18-3-206(1)(a), (b), C.R.S. 2017. Following a jury trial, Lopez was convicted as charged. This appeal followed.

## II. Conflict-Free Counsel

¶ 4 Lopez contends that the trial court violated his constitutional right to conflict-free counsel because it did not obtain a valid waiver of the right from him. We agree.

### A. Additional Facts

¶ 5 Lopez was prosecuted by the El Paso County District Attorney's Office (DA) and represented by the same attorney (defense counsel) throughout the pendency of his case. Before entering his appearance as Lopez's counsel, and then concurrently with the representation, defense counsel was prosecuted by the same DA for multiple offenses.

¶ 6 In July 2015, the DA charged defense counsel with misdemeanor driving under the influence (DUI); he pleaded guilty in July 2016 and received an eighteen-month deferred sentence. In

2

April 2017, he was charged with a second DUI in the same jurisdiction. In November 2017, defense counsel was charged with driving under restraint by the DA and was charged with the same count again in a separate matter in January 2018. When defense counsel pleaded guilty to the April DUI in December 2017, he was sentenced to work release, in-home detention, and supervised probation, and his 2016 deferred sentence was revoked and replaced with a concurrent, identical sentence. In October 2019, the week before Lopez's trial, defense counsel resolved all of his pending cases through a global disposition. Defense counsel began representing Lopez in August 2017.

¶ 7 In May 2018, the trial court made the following inquiry into whether Lopez had been advised of the potential conflicts of interest that existed due to defense counsel's criminal charges:

> THE COURT: [Defense counsel], have you gone through the advisement slash conflict waiver issues with Mr. Lopez?
>
> [Defense counsel]: What conflict waiver? Oh, yes.
>
> THE COURT: Okay. And Mr. Lopez, you're aware of current circumstances, and you're perfectly fine again continuing with representation by [Defense counsel]?

MR. LOPEZ: Yes, Your Honor.

THE COURT: Excellent. Thank you, very much.

Both parties agree that the court did not speak to Lopez again regarding the conflict of interest after this conversation.

### B.     Standard of Review and Law

¶ 8     In all criminal prosecutions, the accused enjoys the right to effective assistance of counsel for their defense. *See* U.S. Const. amend. VI; *see also* Colo. Const. art. II, § 16; *Strickland v. Washington*, 466 U.S. 668, 685-86 (1984). The right to effective assistance of counsel encompasses the right to conflict-free representation by counsel. *People v. Edehbohls*, 944 P.2d 552, 556 (Colo. App. 1996). "The right to the effective assistance of counsel can therefore be violated by 'representation that is intrinsically improper due to a conflict of interest.'" *Dunlap v. People*, 173 P.3d 1054, 1070 (Colo. 2007) (quoting *People v. Castro*, 657 P.2d 932, 943 (Colo. 1983), *overruled on other grounds by West v. People*, 2015 CO 5, ¶ 29).

¶ 9     Once a potential conflict of interest is apparent, defense counsel has a duty to advise the defendant of the nature of the

4

conflict, and to describe how the conflict may affect their representation in plain terms. *Edebohls*, 944 P.2d at 556. And once the trial court learns that counsel has a conflict of interest, it "has a duty to inquire into the propriety of continued representation." *People v. Delgadillo*, 2012 COA 33, ¶ 31.

¶ 10    Although a defendant is entitled to conflict-free counsel, they may waive that right in many circumstances. *Castro*, 657 P.2d at 944. To waive the right to conflict-free counsel, a defendant must be fully advised of the existing or potential conflict. *People v. Martinez*, 869 P.2d 519, 525 (Colo. 1994). A waiver is valid on a showing that the defendant was "aware of the conflict and its likely effect on the attorney's ability to offer effective representation and that the defendant thereafter voluntarily, knowingly, and intelligently relinquished [their] right to conflict-free representation." *Castro*, 657 P.2d at 946. Further, "'[t]he record must affirmatively show that the trial court fully explained the nature of the conflict and the difficulties defense counsel faced in [their] effective advocacy for the defendant.'" *Edebohls*, 944 P.2d at 557 (quoting *Martinez*, 869 P.2d at 525).

¶ 11     "The violation of a defendant's right to conflict-free representation cannot be viewed as harmless error."  *Id.* at 559. When there is not a valid waiver of a defendant's right to conflict-free representation, reversal of the defendant's conviction is required.  *Id.*

## C.    Analysis

¶ 12     A conflict of interest exists when defense counsel's own interests could limit their ability to represent a client.  *Delgadillo*, ¶ 9.  In *Edebohls*, a division of this court held that a conflict of interest exists "when defense counsel has been charged with a crime and is susceptible to prosecution, during the pendency of the representation of their client, by those responsible for the client's prosecution."  944 P.2d at 556.  In that situation, the *Edebohls* division explained, defense counsel's interests conflict with the client's interests because the prosecutor "'might take umbrage at a vigorous defense' of [the] defendant and become more ardent in the prosecution of defense counsel" — or, at least, defense counsel may fear as much.  *Id.* (quoting *Castro*, 657 P.2d at 945).  This case — where the same DA pursued charges against Lopez and defense counsel simultaneously — concerns facts nearly identical to

6

those in *Edebohls*.  *See id.*  Thus, defense counsel labored under an actual conflict of interest.  *See id.*

¶ 13    Once a trial court learns that counsel has a conflict of interest, its duty "to inquire into the propriety of continued representation" includes explaining to the defendant, on the record, the nature of the conflict and seeking from the defendant "a narrative response, on the record, indicating [their] understanding of the right to conflict-free representation and a description of the conflict at issue."  *Delgadillo*, ¶ 31 (citation omitted).  Although the trial court has broad discretion in this inquiry, it must, at a minimum, ensure that the defendant knows the specific nature of the conflict.  *See, e.g.*, *Edebohls*, 944 P.2d at 557-58 (waiver was invalid because the trial court did not specifically ascertain whether defense counsel and defendant had discussed the conflict of interest and it did not explain the conflict to the defendant); *Delgadillo*, ¶¶ 32, 37 (same); *Martinez*, 869 P.2d at 524-29 (waiver was valid because the court explicitly made sure that Martinez was aware of counsel's conflicts and their effect on the representation); *People v. Preciado-Flores*, 66 P.3d 155, 168-69 (Colo. App. 2002) (same).  The trial court did not do so here.

¶ 14     The People assert that *People v. Waddell,* 24 P.3d 3, 8 (Colo. App. 2000), is instructive here because in that case a division of this court found a defendant's waiver to be knowing and intelligent despite the "abbreviated nature" of the court's discussion of conflicts.  However, the brevity of the *Waddell* trial court's inquiry was not the deciding factor in the case.  Rather, the waiver in *Waddell* was valid because the court verified that the defendant was aware of the specific charges against defense counsel before accepting his waiver.  *Id.* at 7.  Here, the court only asked if Lopez was aware of "current circumstances," and made no mention of the fact that defense counsel had been criminally charged.  Thus, the court's inquiry was procedurally deficient.  Furthermore, other than the words of defense counsel, nothing in the record indicates that Lopez was informed of the nature and potential consequences of the conflict beforehand.  Defense counsel said that he had advised Lopez about the conflict but could not confirm how many times he had spoken with Lopez on the subject because he did not document it, nor could he confirm whether he had a written waiver of conflict signed by Lopez, as would be consistent with Colo. RPC 1.7(b)(4).  Defense counsel also did not refer Lopez to any independent

counsel to advise him regarding the conflict. Accordingly, we cannot find that the court's inquiry was sufficient for Lopez's waiver to be knowing and intelligent.

¶ 15 The People further argue that even if we do not find a knowing and intelligent waiver, Lopez should be denied relief unless he can satisfy the *Sullivan* prophylaxis outlined in *Ybanez v. People*, 2018 CO 16, ¶¶ 26-29, and *West*, ¶¶ 3, 36 — that is, a showing that a conflict of interest existed, and the conflict itself adversely affected counsel's performance. To prevail under the People's argument, Lopez would have to

> (1) identify a plausible alternative defense strategy or tactic that counsel could have pursued, (2) show that the alternative strategy or tactic was objectively reasonable under the facts known to counsel at the time of the strategic decision, and (3) establish that counsel's failure to pursue that strategy or tactic was linked to the conflict.

*Ybanez*, ¶ 27 (citing *West*, ¶ 57); *see also Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980).

¶ 16 *West*, in applying the *Sullivan* prophylaxis, overruled *Castro*. *Castro* presumed, rather than required, proof that an actual conflict of interest adversely affected the representation. *See West*, ¶ 2; *see*

9

*also Castro*, 657 P.2d at 944-45.  However, *West* expressly limited its holding to conflicts involving the representation of multiple codefendants.  *West*, ¶ 36.  In *Ybanez*, our supreme court again applied the *Sullivan* prophylaxis, but pointedly noted the express limitations of *West*'s holding and explicitly limited the *Ybanez* holding in the same way, stating,

> With regard to the kinds of conflicting loyalties or interests to which the so-called *Sullivan* prophylaxis . . . is at least potentially applicable, in *West* we acknowledged remaining uncertainty and expressly limited our holding in that case to the conflicts arising from multiple representation implicated there. Again today, although for very different reasons, we find it unnecessary to decide the extent to which the separate standard for actual conflicts of interest applies to conflicting loyalties or interests apart from those implicated by multiple representations.

*Ybanez*, ¶ 29 (citation omitted).  Consistent with the limits of the holdings in *West* and *Ybanez*, neither case mentioned — much less overruled — *Edebohls*.  Thus, *Edebohls*, and the division's presumption of an adverse effect from the conflict created by both the defendant and defense counsel facing criminal charges in the same jurisdiction, remains persuasive authority.  Moreover, *Castro*,

10

upon which *Edebohls* relies, appears to have been overruled only in conflicts involving multiple representations.

¶ 17    The conflict of interest in this case does not involve multiple representations by the defense attorney.  Here, the defense attorney himself was being prosecuted, making the conflict personal rather than professional.  When representing codefendants, a lawyer is attempting to negotiate the freedom of others.  However, in situations where defense counsel is under current criminal charges, representation of the defendant is likely to be hampered by the fear that "'the prosecutor might take umbrage at a vigorous defense' of defendant and become more ardent in the prosecution of defense counsel." *Edebohls*, 944 P.2d at 556 (quoting *Castro*, 657 P.2d at 945).  When defense counsel must balance preserving their own freedom against fighting for the best interest of a client, "a reviewing court cannot reliably determine to what extent . . . decisions were based on legitimate tactical considerations and to what extent they were the result of impermissible considerations." *Id.* at 559 (citation omitted).  Further, the impact on the zeal with which a defense attorney in this position represents a client cannot be

11

measured and could involve an attorney accused of even more serious charges than those defense counsel faced here.

¶ 18     Applying *Ybanez*, *West*, and by extension the *Sullivan* prophylaxis to the present case would place an extremely high burden on Lopez's efforts to protect his constitutional rights. Because *Edebohls* has not been overruled and our supreme court was careful to limit the reach of *West* and *Ybanez*, adopting the *Sullivan* prophylaxis for the actual conflicts of interest represented by this case would be a significant shift in Colorado jurisprudence — something more appropriate for our supreme court to decide. Until that court sets a new direction, we respect the limits of *West* and *Ybanez*.

### III.    Conclusion

¶ 19     The judgment is reversed, and the case is remanded for a new trial.

JUDGE FOX and JUDGE CASEBOLT concur.